# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAREN EASLEY,     :
   Plaintiff     :
           :   **No. 1:17-cv-00930**
   v.        :
           :   **(Judge Rambo)**
BRENDA TRITT, <u>et al</u>.    :
   Defendants    :

## MEMORANDUM

## I. BACKGROUND

<u>Pro se</u> Plaintiff, Warren Easley ("Easley"), an inmate housed at the State Correctional Institution, Hunlock Creek, Pennsylvania ("SCI-Hunlock Creek"), initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 on May 26, 2017. (Doc. No. 1.) The Court performed an initial screening of the complaint pursuant to the Prison Litigation Reform Act ("PLRA"), and on June 30, 2017, dismissed the complaint in part for failure to state a claim upon which relief may be granted. (Doc. Nos. 8, 9.) The Court granted Easley thirty days leave in which to file an amended complaint. (<u>Id.</u>) On July 26, 2017, the Court received and docketed Easley's amended complaint (Doc. No. 11), and on August 23, 2017, ordered service of the same on the within-named Defendants (Doc. No. 13).

On October 23, 2017, the Court received two motions to dismiss the amended complaint from two sets of Defendants. (Doc. Nos. 23, 24.) Specifically,

Defendants Albert, Boyce, Corby[1], Dowd, Gregoire[2], Keller[3], Kostinko[4],

Marhelko, Marsh, Miller, Newberry, Tomcavage, and Tritt ("DOC Defendants"),

filed their motion to dismiss (Doc. No. 23), arguing, in part, that Easley failed to

exhaust his administrative remedies (Doc. No. 34.)  Similarly, Defendant Shiptoski

filed a motion to dismiss (Doc. No. 24), arguing, in part, that Easley failed to

exhaust his administrative remedies (Doc. No. 40).  Pursuant to Paladino v.

Newsome, 885 F.3d 203 (3d Cir. Mar. 16, 2018), and the Court observing that

Defendants raised the issue of whether Easley exhausted his administrative

remedies, the Court issued a Paladino Order, informing the parties that it would

consider the exhaustion issue in the context of summary judgment, and by doing

so, would consider matters outside the pleadings in its role as factfinder.  (Doc. No.

57.)  The Court afforded the parties additional time in which to file supplemental

materials specifically addressing the exhaustion issue.  (Id.)

In accordance with this Court's May 8, 2018 Paladino Order, DOC

Defendants filed their motion converted to summary judgment on May 24, 2018

(Doc. No. 59), along with their statement of facts (Doc. No. 60), exhibits (Doc.

Nos. 61-65), and brief in support (Doc. No. 66).  Defendant Shiptoski filed a

---

[1] Corby is incorrectly identified as "Korby" in the amended complaint.  (Doc. No. 66 at 7.)
[2] Gregoire is incorrectly identified as "Gregiore" in the amended complaint.  (Doc. No. 66 at 7.)
[3] Keller is incorrectly identified as "Kellar" in the amended complaint.  (Doc. No. 66 at 7.)
[4] Kostinko is incorrectly identified as "Kistinko" in the amended complaint.  (Doc. No. 66 at 7.)

supplemental brief in accordance with the <u>Paladnio</u> Order on June 14, 2018 (Doc.

No. 69), along with his statement of facts (Doc. No. 70).  Easley has filed

oppositional briefs (Doc. Nos. 67, 71), a declaration (Doc. No. 72), and a statement

of disputed facts (Doc. No. 73).  Easley has also filed a motion for default

judgment against Dr. Pandya.[5]  (Doc. No. 78.)  Accordingly, this matter is ripe for

disposition.

## II.     STANDARDS OF REVIEW

### A.     Motion to Dismiss

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must

accept as true all factual allegations in the complaint and all reasonable inferences

that can be drawn from them, viewed in the light most favorable to the plaintiff.

<u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010).  The

Court's inquiry is guided by the standards of <u>Bell Atlantic Corp. v. Twombly</u>, 550

U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  Under <u>Twombly</u> and

<u>Iqbal</u>, pleading requirements have shifted to a "more heightened form of pleading."

<u>See</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

---

[5] While Dr. Pandya is named as a Defendant, the docket reflects that he has never been properly
served with the amended complaint and the record further reflects that Plaintiff has not attempted
further service.  (Doc. No. 14.)  Therefore, Dr. Pandya will be dismissed pursuant to Federal
Rule of Civil Procedure 4(m).  Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days
after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must
dismiss the action without prejudice against that defendant or order that service be made within a
specified time.").

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's

claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of pro se prisoner litigation specifically, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.    Motion for Summary Judgment

"When a motion to dismiss is converted into a motion for summary judgment the parties must be given notice of the conversion and an opportunity to present material to the court." Latham v. U.S., 306 F. App'x 716, 718 (3d Cir.

2009); see also Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). The United

States Court of Appeals for the Third Circuit has held that filing a motion to

dismiss, or in the alternative, a motion for summary judgment is sufficient "to

place the parties on notice that summary judgment might be entered." Hilfirty v.

Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).[6]

Summary judgment is appropriate when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact, and the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is

"genuine" if there is sufficient evidence with which a reasonable jury could find

for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson,

477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of

the case. Anderson, 477 U.S. at 248. In determining whether an issue of material

fact exists, the court must consider the evidence in the light most favorable to the

non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir.

2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988).

---

[6] Both parties have been given a reasonable opportunity to present material relevant the converted motions. (See Doc. No. 57) (May 8, 2018 Order advising parties that the Court will consider the exhaustion issues in the context of summary judgment, and that Easley must oppose the motions as required by M.D. Pa. L.R. 56.1).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." U.S. Bank, Nat'l Ass'n v. Greenfield, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

## III.   ALLEGATIONS OF THE AMENDED COMPLAINT

Easley alleges that while incarcerated at SCI-Frackville, Defendants violated his First and Eighth Amendment rights through deliberate indifference, denial of medical care, failure to protect, retaliation, access to courts, and excessive force. (Doc. No. 11.) Specifically, Easley alleges that Defendant Shiptoski, a certified registered nurse practitioner, violated his Eighth Amendment rights by failing to move Easley to a Mental Health Unit ("MHU"). (Id. ¶ 195.) Easley claims that

between March 3, 2015 to October 3, 2017, he "aimed to commit suicide over thirty times resulting in over sixty stitches and over three hospital trips." (Id. ¶ 204.) With regard to the DOC Defendants, Easley alleges that he was placed in a restrain chair and an intermediate restraint belt (id. ¶¶ 22, 26, 31, 32, 42-45, 72, 73, 108), placed in a "grind up" cell with no mattress and deprived of "basic human need[s]" (id. ¶¶ 23, 48, 49, 65, 69), was forced to sleep in feces and defecate on the floor (id. ¶¶ 25, 79, 95, 96), sprayed with "OC" mace (id. ¶ 27, 29, 110), assaulted (id. ¶¶ 35, 40), had his hair "forcefully cut" (id. ¶ 55), tasered (id. ¶¶ 59, 60), had reports falsified against him (id. ¶¶ 62, 63, 165, 166), was placed in a "dry cell" (id. ¶ 74, 75, 85), was served a "food loaf" (id. ¶ 123), was placed on a medical diet (id. ¶ 124), was placed on a seven-day step down program to earn privileges (id. ¶ 129, 131), was put on grievance restriction (id. ¶ 130), had a smock blanket placed around his body while in a restraint chair causing him to choke (id. ¶¶ 134, 135), was extracted from his cell and forced to "parade" naked in front of other inmates (id. ¶¶ 157, 160), assaulted with urine (id. ¶ 168), was called a "rat" (id. ¶ 174, 177), was encouraged to swallow toenail clippers and a metal bolt and was then forced to sift through his own feces in order to recover these items (id. ¶¶ 182, 183), had grievances withheld or did not receive timely responses (id. ¶¶ 219-223),

and had legal documents confiscated and thrown away, resulting in a denial to access to the courts (id. ¶¶ 224-226).

## IV.    STATEMENT OF FACTS[7]

Because there are two pending motions for summary judgment on the issue of exhaustion by two separate groups of Defendants, the Court will set forth the statement of facts from the DOC Defendants followed by Defendant Shiptoski.

### A.    DOC Defendants' Statement of Facts

The DOC has established an inmate grievance review system to provide prisoners in its custody with a regular procedure to resolve problems or other issues arising during the course of their confinement, set forth in DC-ADM 804. (Doc. No. 60 ¶ 3.)  The grievance system requires an inmate to submit an initial

---

[7] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  Id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. Nos. 60, 70.)  Easley has failed to file a response to Defendants' statement of material facts in compliance with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)); see M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

grievance to the Facility Grievance Coordinator.  (Id. ¶ 4.)  It must be filed within fifteen working days after the event upon which the claim is based, and must "include a statement of the facts relevant to the claim . . . [and] shall identify individuals directly involved in the event(s)."  (Id. ¶ 8.)  The initial grievance "shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law."  (Id. ¶ 9.)  An inmate may then file an appeal with the Superintendent if dissatisfied with the initial review of the grievance.  (Id. ¶ 5.)  An inmate's final appeal is to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  (Id. ¶ 6.) Between March 2015 and December 2016, Easley filed and appealed hundreds of grievances to SOIGA.  (Id. ¶ 10.)

## B.    Defendant Shiptoski's Statement of Facts

DOC policy DC-ADM 804 sets out a three-step grievance and appeals process available to all DOC inmates.  (Doc. No. 70 ¶ 5.)  An initial grievance is filed with the facility grievance coordinator within fifteen working days after the event upon which the claim is based.  (Id. ¶¶ 6, 7.)  The grievance must include a statement of facts relevant the claim, identify individuals directly involved in the events and include the date, approximate time, and location of the events that give rise to the grievance.  (Id. ¶¶ 8, 9.)  If the facility grievance coordinator determines

that the grievance was not properly submitted, it will be rejected and returned to the inmate with a grievance rejection form. (Id. ¶ 10.) If a grievance is properly submitted, a staff member will be designated to serve as the grievance officer and conduct an initial review and provide a response to the grievance. (Id. ¶¶ 11, 12.)

An inmate may appeal an initial review response or rejection to the Facility Manager in writing within fifteen working days form the date of the initial review response or rejection. (Id. ¶ 13.) The Facility Manager will either uphold the response, uphold the inmate, dismiss the appeal, or uphold in part/deny in part. (Id. ¶ 17.) An inmate may file an appeal to final review if he is dissatisfied with the disposition of an appeal from the Facility Manager. (Id. ¶ 18.) The decision from the appeal to the Facility Manager must be received by the inmate before an appeal to final review can be sought and must be submitted for final review within fifteen working days form the date of the Facility Manager's decision. (Id. ¶ 19, 20.) Only those issues appealed to the facility manager may be appealed to final review. (Id. ¶ 21.) The final review is to SOIGA and SOIGA will issue a decision with one of the following dispositions: uphold response, uphold inmate, dismiss, or uphold in part/deny in part. (Id. ¶¶ 23, 24.)

Due to the hundreds of grievances appealed to SOIGA by Easley, Grievance Officer Mr. Bell focused on the grievances between March 2015 and December

2016, the relevant time frame related to Easley's amended complaint. (Id. ¶¶ 25-27.)  Copies of grievance documents filed between March 2015 and December 2016 "that were not either dismissed as untimely or due to a failure to comply with the submission procedures described in the DC-ADM-804" were attached. (Id. ¶ 30.)  None of the more than 150 grievances relate to Easley's claim against Defendant Shiptoski or Easley's allegation that he was improperly denied a transfer to the Mental Health Unit. (Id. ¶ 33.)

Chief Grievance Officer from SOIGA Dorina Varner also provided that Easley had filed 239 grievances from January 1, 2015 to September 20, 2017. (Id. ¶ 33.)  The only grievance related to Easley's claim against Defendant Shiptoski from these dates is Grievance No. 576036. (Id. ¶¶ 34-36.)  SOIGA rejected Grievance No. 576036 on January 19, 2016, due to Easley's failure to comply with submission procedures and no other grievances were appealed to SOIGA by Easley from March 2015 to December 2016 relating to Defendant Shiptoski. (Id. ¶ 36.)  Easley admits in his oppositional brief that Grievance No. 576036 was found to be untimely on final review. (Id. ¶ 37.)

In Grievance No. 576036, Easley provides that Defendant Shiptoski and Defendant Boyce denied his request for placement in the Mental Health Unit. (Id. ¶ 38.)  This grievance was not decided on its merits due to Easley's failure to

12

comply with submission procedures.  (Id. ¶ 39.)  Specifically, Easley failed to

appeal the initial grievance response to the facility manager in the allotted time of

15 working days, and the grievance was dismissed as untimely.  (Id.)  Easley did

not properly appeal a single grievance related to his allegations against Defendant

Shiptoski through the final review process.  (Id. ¶ 40.)

## V.    DISCUSSION

Defendant Shiptoski seeks an entry of summary judgment on the ground that

Easley has failed to properly exhaust the available administrative remedies.  (Doc.

No. 69.)  Alternatively, Defendant Shiptoski moves to dismiss Easley's claim

against him for failure to state a claim upon which relief may be granted.  (Doc.

No. 40.)  Similarly, DOC Defendants seek a partial entry of summary judgment for

Easley's failure to properly exhaust the available administrative remedies, or,

alternatively, to dismiss the disparate claims not arising out of the same

transaction, occurrence, or series of transactions.  (Doc. No. 66.)  The Court will

first address the exhaustion issue, beginning with Defendant Shiptoski, followed

by any remaining claims against Defendants.

### A.    Exhaustion of Administrative Review

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must

pursue all available avenues for relief through the prison's grievance system before

bringing a federal civil rights action.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)  ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C. § 1997(e).  The exhaustion requirement is mandatory.  Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement.  Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court.  Id.  Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court.  Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  Courts have concluded that inmates who fail to fully,

14

or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court.  See e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception.  If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  Warman, 49 F. App'x at 368; see also Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'") (citations omitted).

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d

229, 237 (3d Cir. 2003) (internal quotations omitted)).  If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented."  Id. (quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

### i.     Defendant Shiptoski

The only allegation lodged against Defendant Shiptoski in the amended complaint is that he refused to place Easley in the MHU.  (Doc. No. 11 ¶¶ 195, 196.)  Defendant Shiptoski argues that this claim should be dismissed because Easley failed to exhaust his administrative remedies.  (Doc. No. 69 at 4.)  Shiptoski supports this position through citing the only grievance in which Shiptoski was named – Grievance No. 576036.  (Doc. No. 40-1, Ex. A.)  In this grievance, Easley complains that on July 9, 2015, he asked DOC Defendant Boyce and Defendant Shiptoski if he could be placed in the MHU.  (Id.)  Easley alleges that Defendant Boyce stated "you are not going to get no where just because you tried to hurt yourself."  (Id.)  No further allegations are made against Defendant Shiptoski in the grievance or in the amended complaint.  (Id.; Doc. Nos. 11, 40 at 2.)

Grievance No. 576036 was rejected by SOIGA on January 19, 2016 due to Easley's failure to comply with submission procedures in that his appeal to the

Facility Manager was submitted untimely. (Doc. No. 40-1, Ex. A.) Easley's failure to properly exhaust Grievance No. 576036 is further confirmed by the Declaration of Keri Moore, Assistant Chief Grievance Officer. (Doc. No. 70-1, Ex. F ¶¶ 8-10.) Thus, the undisputed facts demonstrate that Easley failed to comply with the submission procedures and accordingly, his grievance was never considered on the merits, and there is no evidence that he ever remedied that procedural default. (Id.); see Nyhuis, 204 F.3d at 75-76 (across-the-board administrative exhaustion by inmates is required prior to pursuing claims in federal court); Spruill, 372 F.3d 218 (courts impose a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court); Bolla, 304 F. App'x 22 (Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court).

Easley contends in his oppositional brief and declaration that he exhausted his remedy against Defendant Shiptoski "to the best of his ability"; however, DOC Defendants Newberry, Tritt, and Tomcavage manipulated the grievance process. (Doc. No. 67 at 21, 22; Doc. No. 72.) Specifically, Easley references his attempted appeals of Grievance No. 576036 to support his argument that the grievance

18

system was unavailable to him because of prison official's actions. (Doc. No. 40-1, Ex. A; Doc. No. 67 at 22.) If true, this may excuse Easley from the full and proper exhaustion requirement because it could have affected his access to the grievance procedure. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that a prisoner's failure to exhaust his administrative remedies was excused where prison officials refused to provide grievance forms); Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002) (explaining that "[s]ection 1997e(a) only requires that prisoners exhaust such administrative remedies as are available").

In Brandt v. Pucci, No. 3:cv-05-2666, 2007 WL 1031509, at *2 (M.D. Pa. Mar. 30, 2007), the court provided that prisoners are only required to exhaust administrative remedies that are available to them. Therefore, "'[a] grievance procedure is not available even if one exists on paper if the defendant prison official somehow prevent a prisoner from using it.'" Id. (quoting Alden v. Smith, No. 3:cv-05-1735, 2007 WL 776868, at *7 (M.D. Pa. Mar. 12, 2007)). The Brandt court held that the "[p]laintiff's declaration that prison corrections officers thwarted his access to the administrative remedy process suffices to create a genuine issue of material fact" as it pertains to administrative remedies being available. Id. at *3.

In reviewing the record and the history of Grievance No. 576036, the Court finds support in Easley's argument that prison officials hindered his ability to properly exhaust his administrative remedies. Indeed, in his appeal from Grievance No. 576036, Easley provides that he did not receive a response from his initial filing of the grievance on July 9, 2015, until August 25, 2015, rather than July 30, 2015 as was provided on the grievance response. (Doc. No. 40-1, Ex. A at 6.) He filed his appeal on September 6, 2015, or within the 15 day period from August 25, 2015. (Id.) He further provides in this appeal that DOC Defendant Tomcavage responded that the reason for the delay in providing Easley the initial grievance response was that Tomcavage forgot that this response was on his cabinet. (Id.) The Court finds that due to no fault of his own, Easley was unable to properly exhaust this grievance and accordingly, concludes that the he must be excused as the formal grievance process was rendered unavailable to him. See Rister v. Lamas, No. 4:cv-10-1574; 2011, WL 2471486, at *6 (M.D. Pa. June 21, 2011); Mitchell, 318 F.3d at 529; Brown, 312 F.3d at 112-13. Consequently, the Court will deny Defendant Shiptoski's motion for summary judgment on the exhaustion issue.[8]

---

[8] This conclusion is equally applicable to DOC Defendant Boyce as he is named in the same grievance. However, as discussed infra, the Court finds that Easley has failed to state a claim against Defendant Shiptoski and Defendant Boyce upon which relief may be granted, and Defendant Shiptoski and Boyce will therefore be dismissed from this action.

### ii.    DOC Defendants

Similarly, DOC Defendants contend that various claims against each of them must be dismissed for Easley's failure to properly exhaust his administrative remedies.  (Doc. No. 66 at 11-16.)  Easley counters that he exhausted his remedies to the "best of his ability" but that prison officials "manipulated" the grievance process in that they lost, discarded, ignored, or falsified the grievance documents, which impacted Easley's ability to properly exhaust his administrative remedies.  (Doc. No. 67.)  In further support of this argument, Easley attaches to his oppositional brief numerous inmate request forms inquiring as to the status of his grievances.  (Id. at 29-54.)  Many of the responses to Easley's concerns he received from staff members included statements such as "noted", "this is being addressed", "concerns noted."  (Id.)  Easley's documents support his contention that he was not receiving responses to his grievances in a timely fashion that would enable him to timely file his appeals.  (Id.)

While the Court finds support for this argument against the majority of the DOC Defendants, the Court notes that as to DOC Defendant Keller, this does not hold true.  Easley claims that DOC Defendant Marhelko told Keller that Marhelko called Easley a rat.  (Doc. No. 11 ¶¶ 174, 175.)  Keller maintains that Easley did not make such an allegation in his prison grievances.  (Doc. No. 66 at 19.)  Easley

argues that he filed Grievance No. 617506, wherein he alleges that Marhelko "told Kell[e]r I called you a rat."  (Doc. No. 67 at 18).  In reviewing Grievance No. 617506, it is clear that Easley alleges that Marhelko told Keller that Marhelko called Easley a rat.  (Doc. No. 62-18 at 3.)  However, neither the grievance nor the complaint accuses Keller of calling Easley a rat.  Accordingly, this claim against Keller will be dismissed.  All other claims against Keller remain.

As for the claims of assault and abuse by DOC Defendant Kostinko, Kostinko argues that Easley failed to file any grievances pertaining to such allegations.  (Doc. No. 66 at 19-20.)  Easley admits that while he did not file a grievance pursuant to DC-ADM-804, he did file a complaint concerning the assault by Kostinko pursuant to DC-ADM-001.  (Doc. No. 67 at 19, 46.)  Courts within the Middle District have consistently held the viability of exhausting abuse claims under either DC-ADM-001 or DC-ADM-804.  See Pressley v. Huber, No. 3:08-cv-00449, 2018 WL 1079612, at *8 (Jan. 11, 2018) (providing that claims predicated upon reporting abuse may be exhausted under DC-ADM-001 or via the grievance procedures outlined in DC-ADM-804); Daniel v. Wetzel, No. 1:15-cv-00850, 2016 U.S. Dist. LEXIS 39547, at *14-16 (M.D. Pa. Mar. 24, 2016) ("Grievances alleging abuse of an inmate by a staff member or other noninmate may be addressed through the DC-ADM 804 grievance process, or they may also be

addressed by alternative reporting methods set forth in DC-ADM 001."); <u>Williams v. Phillps</u>, No. 2:17-cv-04291, 2018 WL 1887462, at *2 (E.D. Pa. Apr. 20, 2018). Accordingly, the Court will deny Defendant Kostinko's motion on this ground.[9]

DOC Defendant Marsh argues that Easley has not filed any grievances relevant the allegations in his amended complaint against him, and accordingly, the claims against him must be dismissed. (Doc. No. 66 at 20.) Easley acknowledges as much in his oppositional brief and does not dispute that he failed to file any grievances against Defendant Marsh. (Doc. No. 67 at 21.) However, Easley claims that he was unable to initiate a grievance against Marsh because he "is not a part of SCI-Frackville." (Doc. No. 67 at 21.) Easley provides no support for this contention. Because it is undisputed that Easley has not exhausted his administrative remedies against Defendant Marsh, entry of summary judgment in favor of Marsh on the basis of non-exhaustion is appropriate.

DOC Defendant Miller moves for partial summary judgment on exhaustion grounds related only to claims against him that he paraded Easley around and put him in a cell naked. (Doc. No. 66 at 21.) He also moves for partial summary judgment as to any claims against him that he denied Easley a haircut exemption in 2014 as barred by the statute of limitations. (<u>Id.</u>) In support, Miller argues that

---

[9] The above analysis is equally applicable to Defendant Corby because Plaintiff similarly provides that he submitted a complaint outlining the alleged assault by Corby. (Doc. No. 67 at 44.) Accordingly, Defendant Corby's motion will be denied on this ground.

Grievance No. 574142 was denied for Easley's failure to comply with procedures and Grievance Nos. 582101 and 589392 were dismissed as untimely.  (Id.)

However, Easley counters that none of these grievances are relevant to the instant claim against Defendant Miller, i.e., sexual abuse/harassment.  (Doc. No. 67 at 18.)

Easley provides that Grievance No. 589392 concerned a cell vent and is not at issue in this instant suit, while Grievance Nos. 574142 and 582101 are not related to his claim of sexual abuse/harassment against Miller.  (Id.)  Easley also appears to concede that he did not initiate a grievance concerning the 2014 haircut exemption (id. at 19), and in any event, even if he had and properly exhausted the same, such claim is barred by Pennsylvania's two-year statute of limitations as the incident occurred in 2014 and the instant complaint was filed on May 26, 2017. See Bougher v. Univ. or Pittsburgh, 882 F.2d 74, 78-79 (3d Cir. 1989).

However, with regard to the sexual abuse/harassment claim, Easley provides that he reported that he was a victim of sexual abuse or sexual harassment pursuant to the Prison Rape Elimination Act ("PREA"), and attaches a copy of the complaint to his oppositional brief.  (Doc. No. 67 at 18, 45.)  Pursuant to DC-ADM 008, "[i]nmates shall not utilize the inmate grievance system to report sexual abuse or sexual harassment by a staff member."  DC-ADM 008, Section 3(B)(6); see also DC-ADM 804 (stating that the Inmate Grievance System is not meant to address

24

allegations of sexual abuse and that such allegations "must be addressed through Department policy DC-ADM 008, Prison Rape Elimination Act"); Ingram v. Lane, 2018 WL 3370673, at *3, 4 (W.D. Pa. May 22, 2018) (providing that plaintiff properly exhausted the administrative remedies pertaining to his allegations of a sexual nature (abuse / harassment) against a staff member via DC-ADM-008, PREA). Given the submission of Easley's documents supporting his contention that he filed a PREA complaint alleging sexual abuse/harassment against DOC Defendant Miller, the Court must conclude, at this stage, that Easley properly exhausted his administrative remedy available to him under DC-ADM-008 and consequently, Defendant Miller's partial motion for summary judgment based on failure to exhaust this claim will be denied. [10]

DOC Defendant Tomcavage also moves for partial summary judgment on Easley's claim that Tomcavage witnessed an inmate threaten Easley due to DOC Defendant Marhelko referring to Easley as a "rat." (Doc. No. 66 at 21-22.) Tomcavage contends that Easley has not made this allegation in his prison grievances that were submitted according to DC-ADM-804 procedures and lists Grievance Nos. 573756, 573769, 574142, 576036, 582130, and 636880 in support.

---

[10] Additionally, as to DOC Defendants' contention that Easley failed to file grievances alleging sexual abuse/harassment against DOC Defendants Albert and Gregoire (Doc. No. 66 at 17, 19), for the same reasons set forth above, Defendants Albert and Gregoire's partial motion for summary judgment based on failure to exhaust will be denied. Plaintiff provides support that he filed a PREA complaint against Albert and Gregoire. (Doc. No. 67, at 45, 55.)

(Id.)  He also provides that Grievance Nos. 582101, 585781, 589389, and 589392 were dismissed as untimely.  (Id. at 22.)

Easley appears to contend that none of these grievances listed by Defendant Tomcavage are relevant to Tomcavage, as they pertain to either different DOC Defendants or are irrelevant to the instant lawsuit.  (Doc. No. 67 at 20.)  Rather, Easley provides that the relevant grievance that implicates Tomcavage is Grievance No. 626576, which Defendants do not contest was properly exhausted. (Doc. No. 64-16 at 3, 4.)  Grievance No. 626576 alleges that Tomcavage was aware that an inmate threatened to "beat" the "rat" Easley "first chance [he] get[s]", and that this threat made in front of Tomcavage and Defendant Albert and a subsequent assault occured as a result of Tomcavage placing Easley in a "cage" with the threatening inmate.  (Id.)  Because the record supports Easley's contention and shows that he has properly exhausted this grievance, the Court will deny DOC Defendant Tomcavage's partial motion for summary judgment based on failure to exhaust this claim.

Finally, as is apparent from the parties' submissions as it pertains to remaining DOC Defendants Boyce and Dowd, while many of Easley's grievances were dismissed as untimely, the Court finds that the formal grievance proceeding required by DC-ADM 804 was not "available" to him within the meaning of 42

U.S.C. § 1997e.  See Camp, 219 F.3d 279; Miller v. Norris, 247 F.3d 736, 740 (8th

Cir. 2001) (holding that "a remedy that prison officials prevent a prisoner from

'utilizing' is not an 'available' remedy under § 1997e"); Brandt, 2007 WL

1031509, at *2 (holding that prisoners are only required to exhaust administrative

remedies that are available to them; therefore, "[a] grievance procedure is not

available even if one exists on paper if the defendant prison official somehow

prevent a prisoner from using it") (internal quotation and citation omitted).

Moreover, the Court finds that the "[p]laintiff's declaration that prison corrections

officers thwarted his access to the administrative remedy process suffices to create

a genuine issue of material fact" as it pertains to administrative remedies being

available.  See Brandt, 2007 WL 1031509, at *3.[11]  Consequently, at this juncture,

the Court will deny DOC Defendants Boyce and Dowd's motion for summary

judgment on the exhaustion issue.

---

[11] Indeed, Plaintiff's declaration provides that his grievances were not responded to, responded to
untimely, or withheld, preventing him from properly exhausting many of his grievances.  (Doc.
No. 72 at 3.)  Additionally, Plaintiff cites to numerous grievance responses and inquires he made
to prison officials that support this contention which are contained in the summary judgment
record before the Court.

**B.     Defendant Shiptoski and DOC Defendants Boyce, Newberry, and Marsh's Motions to Dismiss**

Defendant Shiptoski and DOC Defendants Boyce, Newbery, and Marsh[12] move to dismiss the amended complaint on the grounds that Easley has failed to state a claim upon which relief may be granted.  (Doc. No. 40 at 6; Doc. No. 66 at 10.)  The Court will address the contention of each Defendant in turn.

**i.     Defendants Shiptoski and Boyce**

Easley alleges that Shiptoski and Boyce were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment, for failing to place Easley in the MHU upon Easley's request.  (Doc. No. 11 at 34.)  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions

---

[12] Because the Court is granting Defendant Marsh's motion for summary judgment relevant Easley's failure to exhaust administrative remedies, the Court need not address Defendant Marsh's motion to dismiss.

by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facil., 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Peterson v. Knauer, No. 03-5368, 2008 WL 509207, at *3 (E.D. Pa. Feb. 25, 2008) (explaining that the "the refusal to administer pain medication contrary to a surgeon's orders" may constitute deliberate indifference). The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)).

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that

a lay person would easily recognize the necessity for a doctor's attention."

Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Not every condition is a serious medical need; instead, the serious medical need

element contemplates a condition of urgency, namely, one that may produce death,

degeneration, or extreme pain.  See id.

Moreover, because only egregious acts or omissions can violate this

standard, mere medical malpractice cannot result in an Eighth Amendment

violation.  White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); Estelle, 429

U.S. at 106 ("[M]edical malpractice does not become a constitutional violation

merely because the victim is a prisoner.").  The Supreme Court has held that

negligence or inadvertence alone do not rise to the level of a constitutional

violation.  Whitley v. Albers, 475 U.S. 312 (1986).  In Daniels v. Williams, 474

U.S. 327 (1986), the Court noted that "[l]ack of due care suggest no more than a

failure to measure up to the conduct of a reasonable person."  Where a state of

mind is relevant, the complaint is inadequate if it merely contains conclusory

allegations describing the requisite state of mind such as "intentionally" or

"recklessly" without supporting factual allegations.  Wilson v. Seiter, 501 U.S. 294

(1991).

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

While housed in the Behavioral Modification Unit, Easley alleges that on June 15, 2015, he requested that he be placed in the MHU because his mental state was "deteriorating." (Doc. No. 11 at ¶ 195.) Easley claims that Defendant Shiptoski responded that he was not going to be moved and that he was to stay in his current cell and placed on suicide status. (Id. ¶ 196.) That same day, Easley

asserts that he attempted suicide, and again, attempted suicide four days later on June 19, 2015. (Id. ¶¶ 198, 200.) Easley maintains that he asked both Shiptoski and Boyce to be transferred to the MHU on July 9, 2015. (Id. ¶ 201.) This time, Easley alleges that Boyce responded "you are not going to get no where just because you tried to kill yourself and receive[d] stitches." (Id. ¶ 202.) Seven days later, Easley claims he attempted suicide by cutting his wrists and "stuffing" them with feces and after this incident, Boyce allegedly told Easley that "that's some crazy shit. I mean literally" and started laughing. (Id. ¶ 203.) No further allegations are made against either Shiptoski or Boyce.

The Court finds that Easley's allegations amount to, at most, a disagreement with Defendant Shiptoski and Boyce's decision not to place him in the MHU, but rather, to keep him in the Behavioral Modification Unit on suicide watch. A showing of deliberate indifference requires more. See Taylor, 36 F. App'x at 229; Brown, 903 F.2d at 278 ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"). Easley's own allegations provide that he was placed on constant suicide watch in the Behavioral Modification Unit and received necessary medical attention. Easley's dissatisfaction with his mental health treatment decisions simply does not rise to a constitutional violation. The most that can be said of Easley's claim is that it

asserts that Defendant Shiptoski and Boyce's professional judgment was deficient. As articulated above, this is not enough to rise to the level of a constitutional violation. See Brown, 903 F.2d at 278; Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). Accordingly, Defendant Shiptoski and Boyce's motion to dismiss will be granted, and they will be dismissed from this action.[13]

### ii. DOC Defendant Newberry

DOC Defendant Newbery, the Superintendent's Assistant, serves as the grievance coordinator at SCI-Frackville. (Doc. No. 11 ¶ 10.) Easley alleges that he filed a grievance asserting untimely responses to his grievances. (Id. ¶ 218.) He asserts that Newberry collected grievances, stating to Easley "you can file all

---

[13] While it does not appear that Easley brings forth a claim for verbal harassment, Defendant Boyce's contention that verbal harassment does not give rise to a constitutional violation is correct. Indeed, it has been recognized that use of words generally cannot constitute an actionable claim under § 1983. See Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir.); Maclean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa.1995); Murray v. Woodburn, 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); and Jones v. Superintendent, 370 F.Supp. 488, 491 (W.D.Va.1974). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Fisher v. Woodson, 373 F.Supp. 970, 973 (E.D.Va.1973); see also Balliet v. Whitmire, 626 F.Supp. 219, 228-29 (M.D.Pa. Jan. 8, 1986) ("[v]erbal abuse is not a civil rights violation."), aff'd, 800 F.2d 1130 (3d Cir.1986). Accordingly, to the extent Easley does raise a claim of verbal harassment against Defendant Boyce, the same will be dismissed for failure to state a claim upon which relief may be granted.

your grievances on me all you want.  Remember I dictate the grievance process and I will be sure your grievances won't go through.  Have a nice day!"  (Id. ¶ 220.)  He also complains that his grievances were withheld (id. ¶ 223-22), and that Newberry falsified documents to state that his grievances were either never received or that responses to all his received grievances were sent (id. ¶¶ 227-29).

With respect to Easley's claim related to the handling of his grievances, the Court recognizes that the filing of a prison grievance is a constitutionally protected activity.  Robinson v. Taylor, 204 F. App'x 155, 156-57 (3d Cir. 2006).  However, while prisoners have a constitutional right to seek redress of grievances as part of their right of access to the courts, this right is not compromised by the failure of prison officials to address these grievances.  Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004).  This is because inmates do not have a constitutionally protected right to a grievance procedure.  See Jones v. N. C. Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (providing that the law is well settled that there is no constitutional right to a grievance procedure); Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005) (providing that the failure of prison officials to process administrative grievances did not amount to a constitutional violation).  Nor does the existence of a grievance procedure confer upon prison inmate any substantive constitutional rights.  Hoover v. Watson, 886 F. Supp. 410, 418-19 (D.

Del. 1995); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988), <u>cert</u> <u>denied</u>, 488

U.S. 898 (1988); <u>Alexander v. Gennarini</u>, 144 F.App'x 924 (3d Cir. 2005)

(involvement in post-incident grievance process not a basis for § 1983 liability.)

Based on this well-settled law, to the extent that Easley alleges a claim related to

the handling of his grievances, this claim will be dismissed for failure to state a

claim.

   Moreover, Superintendents Assistant Newberry's involvement is limited to

the review of Easley's grievances.  From a review of the amended complaint, it

appears that Easley seeks to impose liability against her based solely on her role in

the administration of his grievances.  Participation in after-the-fact review of a

grievance or appeal is not enough to establish personal involvement.  <u>See</u>  <u>Rode v.</u>

<u>Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1998) (finding that a supervisory

defendant, who, after being informed of the violation through the filing of

grievances, reports or appeals, failed to take action to remedy the alleged wrong

was not enough to show that the defendant had the necessary personal

involvement); <u>Brooks v. Beard</u>, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that

a state prisoner's allegation that prison officials and administrators responded

inappropriately, or failed to respond to a prison grievance, did not establish that the

officials and administrators were involved in the underlying allegedly

unconstitutional conduct); <u>Ramos v. Pa. Dep't of Corr.</u>, Civ. No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).  Here, because the involvement of Newberry is limited to her involvement in the grievance procedure and her review of Easley's grievances, Easley has failed to establish personal involvement for purposes of Section 1983 liability.  Therefore, Newberry will be dismissed as a party to this action.

### C.     Federal Rule of Civil Procedure 20

In the alternative, DOC Defendants seek to sever "the multiple separate and distinct claims" contained in the amended complaint pursuant to Federal Rule of Civil Procedure 20, and require Easley to refile the multiple claims in separate civil actions.  (Doc. No. 66 at 16-18.)  Federal Rule of Civil Procedure 20 provides that:

> Persons … may be joined in one action as defendants if:
>
> (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)    any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20.  Rule 20(a) is designed to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple

36

lawsuits." See Mosley v. C.M. Corp., 497 F.2d 1330, 1332 (8th Cir. 1974). The

decision as to whether permissive joinder should be permitted is within the Court's

sound discretion. Id. In deciding whether to join parties, the Court should use a

liberal standard. Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 160 (S.D.

N.Y. 2009). The Supreme Court in United Mine Workers of Am. v. Gibbs, 383

U.S. 715 (1966), stated:

> [u]nder the Rules, the impulse is toward entertaining the
> broadest possible scope of action consistent with fairness
> to the parties; joinder of claims, parties and remedies is
> strongly encouraged.

Id. at 724. A case-by-case analysis should be made by the Court in determining if

a plaintiff's claims arise out of the same transaction or occurrence. Mosely, 497

F.2d at 1333. The Court should look to the "logical relationship" of the

transactions involved. Id. (quotation omitted). In determining whether a "logical

relationship" exists between claims, the Third Circuit in Xerox Corp. v. SCM

Corp., 576 F.2d 1057 (3d Cir.1978), stated that:

> a detailed analysis must be made to determine whether
> the claims involve: (1) many of the same factual issues;
> (2) the same factual and legal issues; or (3) offshoots of
> the same basic controversy between the parties.

Id. at 1059. Courts in this Circuit have found that "the same series of transactions

or occurrences prerequisite under Rule 20 essentially consumes the second

requirement that there arise a question of law or fact common to all joined parties." Norwood Co. v. RLI Ins. Co., Civ. No. 01-6153, 2002 WL 523946 at *3 (E.D. Pa. Apr. 4. 2002).

The Court notes that pursuant to its foregoing analysis of Defendants' dispositive motions, of the original fifteen (15) Defendants named in the amended complaint, there remains ten (10) DOC Defendants in this action.[14] The ten DOC Defendants are alleged to have been employed at SCI-Frackville during the claimed events of the amended complaint. (Doc. No. 11.) While the Court acknowledges that the amended complaint encompasses alleged violations spanning over a year while Easley was confined at SCI-Frackville, the complaint alleges a series of similar violations by the DOC Defendants, with knowledge and participation of many of the DOC Defendants in the same series of violations. (Doc. No. 11.) The Court is constrained to conclude that in the interest of judicial economy, and because the remaining Defendants in this action have been reduced, and because the remaining allegations involve offshoots of the same basic factual and legal controversies between the parties, the Court will deny DOC Defendants' motion to sever pursuant to Federal Rule of Civil Procedure 20.

---

[14] The remaining DOC Defendants in this action are: Albert, Corby, Dowd, Gregoire, Keller, Kostinko, Marhelko, Miller, Tomcavage, and Tritt.

38

## VI. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss/motions for summary judgment (Doc. Nos. 23, 24, 59), will be granted in part and denied in part for the reasons set forth above, and Plaintiff's motion for default judgment (Doc. No. 28), will be denied.  An appropriate Order follows.


 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 7, 2018