# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WARREN EASLEY,           :
   **Plaintiff**         :
                      :       **No. 1:17-cv-930**
   **v.**             :
                      :       **(Judge Rambo)**
**BRENDA TRITT**, *et al.*,   :
   **Defendants**     :

## MEMORANDUM

Before the Court are several discovery-related motions, as well as a motion to appoint counsel, filed by *pro se* Plaintiff Warren Easley ("Plaintiff"). (Doc. Nos. 204, 214, 221, 227, 230, 234. 236.) The motions are fully briefed and ripe for disposition. Also before the Court is its October 24, 2019 Order staying the above-captioned case pending the United States Court of Appeals for the Third Circuit's disposition of Plaintiff's appeal (Doc. No. 225), and the Third Circuit's February 11, 2020 Order dismissing Plaintiff's appeal for lack of appellate jurisdiction (Doc. No. 247).

## I. BACKGROUND

Plaintiff is proceeding on a civil rights complaint filed pursuant to 42 U.S.C. § 1983 against several correctional officers and medical staff members at SCI Frackville, alleging various incidents of cruel and unusual punishment. (Doc. No. 11.) By Memorandum and Order entered on August 7, 2018, the Court: (1) granted Defendant Shiptoski's motion to dismiss/motion for summary judgment and

dismissed him from this action; (2) granted Defendant Boyce's motion to dismiss/motion for summary judgment and dismissed him from this action; (3) denied Defendants Albert, Boyce, Corby, Dowd, Gregoire, Kostinko, Miller, and Tomcavage's motions to dismiss/motions for summary judgment for Plaintiff's failure to exhaust administrative remedies; (4) granted Defendant Keller's motion to dismiss/motion for summary judgment for Plaintiff's failure to exhaust administrative remedies with respect to his claim that Keller called him a "rat"; (5) granted Defendant Marsh's motion to dismiss/motion for summary judgment for Plaintiff's failure to exhaust administrative remedies and dismissed Marsh from this action; (6) granted Defendant Miller's motion to dismiss/motion for summary judgment on the basis that Plaintiff's 2014 haircut exemption claim was barred by the statute of limitations; (7) granted Defendant Newberry's motion to dismiss/motion for summary judgment and dismissed him from this action; (8) denied the motion to sever filed by several Department of Corrections ("DOC") inmates; and (9) denied Plaintiff's motion for default judgment and dismissed Defendant Dr. Pandya from this action without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. Nos. 81, 82.) The remaining DOC Defendants filed their answer on August 28, 2018. (Doc. No. 88.) In a Memorandum and Order dated July 23, 2019, the Court directed the parties to complete discovery by December 1, 2019. (Doc. Nos. 190, 191.)

Subsequently, Plaintiff filed a motion for leave to file a supplemental or amended complaint. (Doc. No. 199.) In a Memorandum and Order dated September 26, 2019, the Court denied Plaintiff's motion. (Doc. Nos. 211, 212.) Plaintiff filed a timely appeal to the Third Circuit. (Doc. No. 215.) On October 24, 2019, the Court stayed the above-captioned action pending the Third Circuit's disposition of Plaintiff's appeal and deferred ruling on any pending motions until the appeal was resolved. (Doc. No. 225.) In light of the fact that the Third Circuit has now dismissed Plaintiff's appeal, the Court will lift the stay previously imposed in the above-captioned case and consider Plaintiff's pending motions below.

## II. PLAINTIFF'S MOTIONS

### A. Motion to Lodge Sanctions Against Defendants (Doc. No. 214)

Plaintiff has filed a motion seeking sanctions in the amount of $750.00 from Defendants. (Doc. No. 214.) Plaintiff states that sanctions should be imposed because Defendants have been "uncooperative in pursuing discovery for literally over a year sending 'fluff videos' that do not pertain to [the] civil suit." (*Id.*) Plaintiff argues further that Defendants have sent "videos that do not work or don't pertain to [the] civil suit." (*Id.*) Defendants maintain that sanctions are not warranted because they have responded to Plaintiff's discovery requests in good faith. (Doc. No. 226 at 2.)

Nothing before the Court demonstrates that Defendants are acting in bad faith such that the imposition of sanctions would be warranted. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 n.3 (3d Cir. 2008). Defendants indicate that they have "sent Plaintiff the functional video that they have in their possession. Some DVDs have errors, some are showing no video recording, and some cannot be read for unknown reasons." (Doc. No. 226 at 3.) Plaintiff requested approximately 185 video recordings, each of which must be converted to a different file type so that they can be played upon any computer without issue. (*Id.* at 3-4.) Defendants note that they have "received have responded to over twenty separate sets of requests for production by Plaintiff—each set containing multiple requests for production." (*Id.* at 4.) Moreover, in an abundance of caution, Defendants have produced documents and video to Plaintiff even though they "do not appear directly responsive to any of Plaintiff's previous requests." (*Id.*) Plaintiff's belief that Defendants have committed discovery abuses stems from his dissatisfaction with their responses to his voluminous requests for discovery as well as the additional time Defendants have needed to respond to all of his requests. Accordingly, Plaintiff's motion to lodge sanctions (Doc. No. 214) will be denied.

## B. Motions to Compel Discovery and Pursue Sanctions (Doc. Nos. 204, 234)

Plaintiff has filed two motions to compel discovery and pursue sanctions against Defendants. (Doc. Nos. 204, 234.) For the reasons set forth above,

Plaintiff's motions will be denied to the extent that they seek sanctions. The Court considers each motion to compel discovery below.

A party who has received evasive or incomplete discovery responses may seek a Court Order compelling disclosures or discovery of the materials sought. Fed. R. Civ. P. 37(a). "The moving party must demonstrate the relevance of the information sought to a particular claim or defense." *Montanez v. Tritt*, No. 14-1362, 2016 WL 3035310, at *2 (M.D. Pa. May 26, 2016). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Id.* (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

It is well-established that rulings concerning the proper scope of discovery and the extent to which discovery may be compelled are within the Court's discretion. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). The Court's decision regarding the conduct of discovery, including whether to compel disclosure of materials sought in discovery, will only be disturbed upon a showing of an abuse of discretion. *See Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule

26(b)(1) provides for a broad scope of discovery. Consequently, courts often – and appropriately – liberally apply discovery rules. *See, e.g., Clements v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing *Great W. Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994)). Nonetheless, a "valid claim[] of relevance or privilege" operates to restrict a court's otherwise broad discretion under Rule 26(b)(1). *See McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 192-93 (M.D. Pa. 2011).

### 1.    First Motion to Compel (Doc. No. 204)

Plaintiff's first motion to compel takes issue with several of Defendants' responses to his first, second, third, fourth, fifth, sixth, eighth, tenth, thirteenth, fourteenth, and fifteenth sets of requests for production. (Doc. No. 205 at 1-3.)[1]

### a.    Requests for Video

Although Plaintiff takes issue with several of Defendants' responses, most of Plaintiff's arguments concern his failure to receive several videos in response to his requests. Plaintiff maintains that a year has passed and he has not received several requested videos, including videos of exercises in the restraint chair, videos concerning use of force incidents, and videos concerning the use of O.C. spray.

---

[1] Many of Plaintiff's arguments concerning Defendants' responses can be grouped together, *i.e.*, Plaintiff's failure to receive video response to his requests. Accordingly, the Court does not quote every request and response at issue except where, in the Court's opinion, such is needed.

Overall, Plaintiff takes issue with the delay in receiving videos and argues that some of the videos he has received are not relevant to his claims.

In response, Defendants state:

> Through his motion, Plaintiff seeks additional video, but Defendants have sent Plaintiff the functional video that they have in their possession. Some DVDs have errors, some are showing no video recording, and some cannot be read for unknown reasons. Plaintiff claims he requested that video of some events be preserved, but this fact alone is irrelevant if the video is not function and will not play.
>
> Plaintiff requested what amounts to about 185 video recordings, the majority of which are longer than an hour. The videos pose a difficulty for a few reasons—first, they are recorded via the prison's proprietary software and can only be played back with a copy of the prison's proprietary software. Problems routinely arise when attempting to play back the video on various computer systems, with various versions of Windows, and often, the receivers of the video cannot get the video to play at all. As software and hardware on computers are updated, it becomes more difficult to play older video with older playback systems.
>
> To prevent these software related issues for the administration at Plaintiff's prison and him, counsel for Defendants must have the videos, when they are functional, converted into a standard ".wmv" file, which should easily play upon any computer without issue. Defendants are not withholding requested video recordings, nor is there any evidence of such, and they are sending the videos as soon as they are available. Defendants have responded to Plaintiff's production requests and have produced responsive written documents, and as video is made playable, Defendants are producing copies of the video to Plaintiff.

(Doc. No. 216 at 4-5.)

The Court understands Plaintiff's frustrations at the delay in the production of video. However, Plaintiff submitted voluminous discovery requests to Defendants, and each video must first be reviewed to see if it is even functional and then converted into a standard file format that can be played on any computer without

issue. Moreover, to the extent that relevant video is not functional and will not play, the Court "cannot compel the production of things that do not exist. Nor can the [C]ourt compel the creation of evidence by the parties who attest that they do not possess the material sought by an adversary in litigation." *Amfosakyi v. Frito Lay*, No. 1:11-cv-651, 2011 WL 5593133, at *3 (M.D. Pa. Nov. 17, 2011). As noted *supra*, however, the Court is granting Plaintiff's motion for an extension of time to complete discovery and is extending the discovery deadline to April 15, 2020. Accordingly, the Court will grant the motion to compel to the extent that any relevant, functional video that has yet to be turned over to Plaintiff should be produced before April 15, 2020.

### b. Request Regarding Medical Records

Plaintiff takes issue with Defendants' response to the following request set forth in his sixth set of requests for production:

> 7. The [Plaintiff's] complete medical records from March 3, 2015 to the date of your response.
> Response: Defendants OBJECT to this request because it is overbroad and is not relevant to the claims or defenses of any party. Defendants further OBJECT to this request as not being proportional to the needs of this case.
> Defendants further OBJECT to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.
> Without waiving the foregoing objections, Defendants produce supplemental medical record for the limited time period that plaintiff was at SCI Frackville. These records have been marked for production as Req 6-DEF000233-DEF000385.

In his motion, Plaintiff argues that Defendants "only sent progress notes and refusal of medication forms." (Doc. No. 205 at 21.) He asserts that he requested records for injuries sustained on April 8-9, 2015, May 20, 2015, July 28, 2015, August 17, 2015, and December 22, 2015, but that Defendants "sent no medical records pertaining to such incidents although there is documentation of Plaintiff's injury." (*Id.*) In response, Defendants state:

> Counsel for Defendants and Plaintiff recently discussed what Plaintiff sought in regards to the medical notes recently when Plaintiff was deposed. Since Plaintiff clarified his request, Counsel for Defendants is checking the medical records and will follow up with the institution as necessary. If these records exist and have not been produced, the Defendants will supplement their responses.

(Doc. No. 216 at 5-6.) For the same reasons set forth above, the Court will grant Plaintiff's motion to compel to the extent that any additional relevant medical records should be produced to Plaintiff by April 15, 2020.

### c.      Requests for Photographs

In his first set of requests for production, Plaintiff requested that Defendants produce any existing photographs of the use of O.C. spray during a use of force incident that occurred on August 5, 2015. (Doc. No. 205 at 7.) Plaintiff indicates that as of the date of his motion to compel, he had not received any photographs. Defendants have not addressed this request in their oppositional brief. Accordingly, the Court will grant the motion to compel to the extent that any such photographs

exist and direct Defendants to produce such before April 15, 2020, to the extent they have not done so by the date of this Memorandum.

In his eighth set of requests for production, Plaintiff requested a photograph "of the [psychiatric] cell/accountability cell light, bed, walls and toilet." Defendants object to this request as overbroad, irrelevant, not proportional, and having the potential to create safety and security concerns. Plaintiff describes the cell in his motion and argues that because everything is made of steel in the cell, he was "freezing cold" when he was placed in the cell naked. (Doc. No. 205 at 23.) Given Plaintiff's own description of the cell, the Court concludes that a photograph is not necessary and agrees with Defendants' objections. Accordingly, the motion to compel will be denied with respect to this request.

In his fourteenth set of requests for production, Plaintiff requested a photograph of a smock blanket "spread fully out (brown one) and request how much the smock blanket weighs when folded." Defendants objected to this request as overbroad, irrelevant, and not proportional. They also objected to the request as seeking information beyond the scope of the complaint. Plaintiff argues that this information will show that the placement of a smock blanket on an inmate's neck is cruel and unusual because of the "unbearable pain" caused. (Doc. No. 205 at 31-32.) The Court, however, agrees with Defendants' objections to this request. Accordingly, the motion to compel will be denied with respect to this request.

### d. Requests for Reports

### i. First Set of Requests

Plaintiff takes issue with Defendants' response to his sixth request, which states:

> 6. Any and all documents, video, photographs and audio concerning the use of force by defendant Kistinka on 12-22-15 of [Plaintiff].

Although Defendants objected to this request, they did produce documents and videos in response. In his motion, Plaintiff asserts that he has not yet received an audio recording of an interview concerning the use of force incident as well as a copy of the "inmate abuse written about incident on 12-22-15 written by Plaintiff." (Doc. No. 205 at 9.) Defendants have not addressed these requests in their oppositional brief. The Court concludes, however, that the information Plaintiff seeks is relevant to the claims raised in his amended complaint. Accordingly, the motion to compel will be granted with respect to this request, and Defendants will be directed to produce any audio recordings as well as any inmate abuse complaints submitted by Plaintiff concerning the use of force that occurred on December 22, 2015 to the extent that such have not been produced as of the date of this Memorandum and to the extent they are in a format that can be provided to Plaintiff, by April 15, 2020.

### ii. Second Set of Requests

Plaintiff takes issue with Defendants' response to his first request, which states:

> 1. Any and all documents, video, photographs and audio concerning the Prison Rape Elimination Act (P.R.E.A.) or sexual abuse/harassment [Plaintiff] filed on 11-20-15.

Defendants raised several objections to the request but produced documents in response. They further asserted that "[t]o the best of Defendants' knowledge, information and belief, there is no record of Plaintiff filing a complaint related to the Prison Rape Elimination Act on November 20, 2015." Defendants supplemented their response with a November 20, 2015 complaint concerning another inmate. In his motion, Plaintiff requests the "full written version of [the] report written regarding this incident." However, Defendants have asserted that there is no record of Plaintiff filing such a complaint, and the Court cannot compel Defendants to produce what does not exist. *See Amfosakyi*, 2011 WL 5593133, at *3. Accordingly, the motion to compel will be denied with respect to this request.

### iii.    Third Set of Requests

Plaintiff challenges Defendants' responses to his fourth, seventh, and twelfth requests in his third set of requests for production. The Court considers each below.

> 4. Any and all documents, video, photographs, and audio concerning the use of the restraint chair on 5-12-15.

Although Defendants objected to this request, they did produce video and documents in response. In his motion, Plaintiff asks the Court to compel Defendants to produce

"incident reports on Plaintiff being put in restraint chair for 16 hours on 5-12-15."

(Doc. No. 205 at 12.) Defendants have not addressed this request in their

oppositional brief. The Court concludes that such incident reports would be relevant

to Plaintiff's claims for relief. Accordingly, the motion to compel will be granted

with respect to this request, and Defendants will be directed to produce such incident

reports, to the extent that they have not done so as of the date of this Memorandum

and to the extent they are in a format that can be provided to Plaintiff, by April 15,

2020.

> 7. Any and all documents, video, photographs and audio concerning the use
> of restraint chair on 6-21-15 of [Plaintiff].

Defendants responded that they had not found any responsive records for the use of

a restraint chair on 6-21-15. The Court cannot compel Defendants to produce what

does not exist. *See Amfosakyi*, 2011 WL 5593133, at *3. Accordingly, the motion

to compel will be denied with respect to this request.

> 12. Any and all documents, video, photographs and audio concerning the use
> of restraint chair on 8-17-15 of [Plaintiff].

Defendants objected to this request but provided responsive documents and video.

Plaintiff now faults Defendants for not producing the "OSII investigative reports

regarding such incident on 8-17-15." (Doc. No. 205 at 15.) Defendants have not

addressed Plaintiff's argument in their oppositional brief. The Court concludes,

however, that such reports would be relevant to Plaintiff's claims concerning the use

of the restraint chair on that date.  Accordingly, the motion to compel will be granted with respect to this request, and Defendants will be directed to produce such investigative reports, to the extent that they have not done so as of the date of this Memorandum and to the extent they are in a format that can be provided to Plaintiff, by April 15, 2020.

### iv.      Fourth Set of Requests

Plaintiff challenges Defendants' response to his first request in his fourth set of requests, which states:

> 1. Any and all documents, video, photographs and audio concerning the use of intermediate restraint belt on 3-23-15 of [Plaintiff].

Defendants objected to this request but in response directed Plaintiff to "see documents previously produced in response to Plaintiff's (Third) Request for Production of Documents, marked for production as Req 3-DEF000001-Req 3-DEF000099."  In his motion, however, Plaintiff states that the documents produced regard an incident that occurred on July 27, 2015, not March 23, 2015.  (Doc. No. 205 at 16-17.)  Defendants have not addressed this matter in their oppositional brief. Accordingly, the motion to compel will be granted with respect to this request, and Defendants will be directed to produce any documents relevant to this request, to the extent that they have not done so as of the date of this Memorandum and to the extent they are in a format that can be provided to Plaintiff., by April 15, 2020.

### iv.      Fifth Set of Requests

Plaintiff challenges Defendants' responses to his first and second requests in his fifth set of requests, which state:

1. Any and all documents, video, photographs and audio concerning the use of "dry cell placement" on 6-22-15 through 6-24-15 of [Plaintiff].

2. Any and all documents, video, photographs and audio concerning the use of "dry cell placement" on 7-28-15 through 8-1-15 of [Plaintiff].

Although Defendants objected, they provided documents and video in response. In his motion, however, Plaintiff argues that Defendants have not produced the OSII investigative reports regarding these incidents. Defendants have not addressed Plaintiff's argument in their oppositional brief. The Court concludes, however, that such reports would be relevant to Plaintiff's claims concerning the use of dry cell placement during those periods of time. Accordingly, the motion to compel will be granted with respect to this request, and Defendants will be directed to produce such investigative reports, to the extent that they have not done so as of the date of this Memorandum and to the extent they are in a format that can be provided to Plaintiff, by April 15, 2020.

### vi.     Eighth Set of Requests

Plaintiff takes issue with Defendants' response to his first request in his eighth set of requests, which states:

1. Any and all documents, video, photographs and audio concerning the use of restraint chair on 6-19-15 of [Plaintiff].

Although Defendants objected, they provided documents and video in response. In his motion, however, Plaintiff argues that Defendants have not produced the OSII investigative report regarding this incident. Defendants have not addressed Plaintiff's argument in their oppositional brief. The Court concludes, however, that such report would be relevant to Plaintiff's claim concerning use of the restraint chair on June 19, 2015. Accordingly, the motion to compel will be granted with respect to this request, and Defendants will be directed to produce such investigative report, to the extent that they have not done so as of the date of this Memorandum and to the extent they are in a format that can be provided to Plaintiff, by April 15, 2020.

### e.    Requests for Information Regarding Other Inmates

In several of Plaintiff's requests for production, he seeks information regarding other inmates. Specifically, Plaintiff challenges Defendants' responses to two of his requests in his sixth set of requests, in which he requested copies of all grievances, complaints, or other documents related to complaints of excessive force by Defendants made by other inmates and any documents regarding grievances filed by B.M.U. inmates from March 3, 2015 to the date of the response. (Doc. No. 205 at 19, 21.) In his thirteenth set of requests, Plaintiff also requested all disciplinary

records for inmate David Irby. (Doc. No. 205 at 27.) In his fourteenth set of requests, Plaintiff requested all documents regarding inmate Wesley Chance's disciplinary history. Defendants objected to these requests because, *inter alia*, inmates are not permitted to access records related to other inmates.

This Court has "rejected these kinds of discovery requests as being not only overly broad, but unduly infringing upon the privacy rights of other inmates." *Williams v. Wetzel*, No. 1:17-cv-79, 2019 WL 1206061, at *3 (M.D. Pa. Mar. 14, 2019) (collecting cases). In keeping with those decisions, the Court concludes that Plaintiff's request for documents containing information about other inmates is prohibited. "These discovery requests are of questionable relevance and implicate importance privacy and security interest. Moreover, the discovery of such information poses a security risk to both inmates and to any correctional staff who may intervene to stop such a risk." *Id.* Accordingly, the motion to compel will be denied with respect to these requests.

### f.    Requests for DOC Policies

### i.    Tenth Set of Requests

In his tenth set of requests, Plaintiff sought the following information:

2. Plaintiff requests Policy 610 (DC-ADM-610 Food Services Procedures Manual).

Response: Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case. The burden and expense on Defendant in searching for and producing the documents requested outweigh any benefit the documents as requested could confer on Plaintiff in his prosecution of this lawsuit.

Without waiving the above objections, any public portion of DOC policies are in the prison's library and are available to all inmates.

Plaintiff asserts that this policy is relevant because he "was on a therapeutic meal/therapeutic diet approved by medical when [he] was placed on [a] 7-day stepdown by Defendants making him earn his medical approved diet back." (Doc. No. 205 at 24.) He maintains further that the Level 5 housing unit at SCI Forest does not have a copy of the policy available. (*Id.*) Defendants have not addressed Plaintiff's request in their oppositional brief. The Court concludes that DC-ADM 610 is relevant to Plaintiff's claims and that there is little burden in compelling Defendants to produce a copy of a public policy in place during the relevant period, particularly in light of Plaintiff's representation that a copy is not available to him at SCI Forest. Accordingly, the Court will grant the motion to compel with respect to this request.

### ii.     Fifteenth Set of Requests

In his fifteenth set of requests, Plaintiff set forth the following requests concerning DOC policies:

1. [Plaintiff] request[s] redacted parts of policy 6.5.1 and 6.3.1 that only shows the use of handheld camera during the use of force that reiterate how/if inmate[s] are to be visualized during use of force.

2. [Plaintiff] request[s] redacted parts o[f] policy 6.5.1 and 6.3.1 that show anything on inmate[s] being extended in restraint chair after 8 hours.

3. [Plaintiff] request[s] redacted parts of policy 6.5.1 and 6.3.1 that reiterate the use of oleoresin capsicum (o.c.).

4. [Plaintiff] request[s] redacted parts of policy 6.5.1 and 6.3.1 that reiterate the placement of "dry cell" and removal of "dry cell."

5. [Plaintiff] request[s] redacted parts of policy 6.5.1 and 6.3.1 that reiterate the use of the electric body immobilization device (EBID).

6. [Plaintiff] request[s] redacted parts of policy 6.5.1 and 6.3.1 that reiterate use of force when inmates are strapped in restraint chair.

7. [Plaintiff] request[s] redacted parts of policy 6.5.1 and 6.3.1 that reiterate anything on preserving videos of use of force in general and when a[n] inmate ask[s] for preservation of video.

Defendants' response for all seven requests was:

Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff. The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons. Certain policies, procedures manuals, and rules are confidential and cannot be disclosed to inmates. Inmates are not entitled to copies of confidential policies and procedures.

Even the release of "redacted" portions of such policies would defeat the very purpose of having confidential policies and procedures.

Plaintiff claims that these documents are relevant to his claims that Defendants' violation of DOC policy led to his Eighth Amendment rights being violated. (Doc. No. 205 at 32-37.) This Court, however, has previously declined to compel the disclosure of Policies 6.5.1 and 6.3.1, both of which are highly confidential in the interests of prison safety and security. *See Coit v. Garman*, No. 1:17-cv-1438, 2018 WL 3818853, at *2 (M.D. Pa. Aug. 10, 2018); *Eggleston v. Mitchell*, No. 1:12-cv-1220, 2013 WL 5351053, at *1 (M.D. Pa. Sept. 23, 2013); *Victor v. Lawlor*, No. 3:08-cv-1374, 2011 WL 1884616, at *2 (M.D. Pa. May 18, 2011). However, with respect to Plaintiff's first and seventh requests, the Court concludes that Plaintiff had made a claim of relevance (related to suggestions of spoliation) relating to policies regarding the videotaping of use of force events as well as handling requests for preservation of video. Accordingly, the Court will grant the motion to compel to the extent that Defendants will be directed to provide Plaintiff a declaration that fully and accurately summarizes such policies to the extent that such are included in Policies 6.5.1 and 6.3.1. *See Victor*, 2011 WL 1884616, at *2 (directing same with respect to cell extraction videotaping policies).

g.    **Other Requests at Issue**

i.    **Tenth Set of Requests**

Plaintiff challenges Defendants' responses to four (4) more requests set forth in his tenth set of requests for production. The Court considers those below.

3. Plaintiff requests the total number of hours the restraint chair was used on Plaintiff while in the B.M.U. at Frackville.

7. Request all documents pertaining to the "7-day stepdown" that was lodged on Plaintiff while at SCI Frackville.

8. Request any charts, letters, emails, or any information that shows the time Plaintiff spent in the restraint chair, dry cell or intermediate restraint belt.

Defendants objected to these three (3) requests, arguing that they are overbroad, irrelevant, and not proportional. Defendants further argued that they "have already produced documents, photographs and videos related to Plaintiff's claims in response to other requests for production. Therefore, Defendants have met their burden by producing voluminous documentation in response to previous requests by Plaintiff. Plaintiff is directed to review all documents produced to date." The Court agrees with Defendants' objections. These three (3) requests are overbroad and appear to be duplicative of many other requests made by Plaintiff. Accordingly, the Court will deny the motion to compel with respect to these requests.

Plaintiff also takes issue with respect to Defendants' response to his sixth request in this set of requests for production, which requested "[a]ny and all policies, directives, or instructions to staff concerning the use of force by S.C.I. Frackville staff." (Doc. No. 205 at 25.) Plaintiff, however, has not provided a complete copy of that request and Defendants' response. This Court's Local Rules provide that

"[i]f relief is sought under any of the Federal Rules of Civil Procedure, a copy of the discovery matters in dispute shall be filed with the [C]ourt contemporaneously with any motion filed under these rules by the party seeking to invoke the [C]ourt's relief." M.D. Pa. L.R. 5.4(c); *see also Njos v. United States*, No. 3:15-cv-931, 2017 WL 1228398, at *2 (M.D. Pa. Mar. 31, 2017) (noting same). Given Plaintiff's failure to comply with this requirement, his motion to compel (Doc. No. 234) will be denied with respect to this request. Moreover, the Court agrees with Defendants that such policies should remain confidential in the interests of prison safety and security..

### ii.     Fourteenth Set of Requests

Plaintiff next challenges responses to three (3) more of his requests set forth in his fourteenth set of requests for production. The Court considers them below.

1. Plaintiff[] request[s] documents DC-14 of Plaintiff's stay at S.C.I. Frackville from 3.3.15 through 11.10.16.

2. Plaintiff request[s] documents DC-15 of Plaintiff's stay at S.C.I. Frackville from 3.3.15 through 11.10.16.

3. Plaintiff request[s] his ICAR log for daily interactions at S.C.I. Frackville from 3.3.15 through 11.10.16.

Defendants objected to Plaintiff's requests, noting that they were overbroad and irrelevant. Defendants also objected because these requests sought documents that contained confidential information because the DC-14 is the "counselor" file, the DC-15 is the "record" file, and the ICAR is the Inmate Cumulative Adjustment Record. Defendants indicated that inmates are not permitted to access these records.

Defendants did note, however, that "[i]f Plaintiff can narrow his request and/or identify what he seeks in these records with more specificity, Defendants will re-consider the request at that time."

In his motion to compel, Plaintiff maintains that he requested any information in his DC-14 file that indicates if Defendants knew that he faced possible danger from other inmates because of Defendants "promoting [him as] a rat." (Doc. No. 205 at 29.) He requests any information in his DC-15 file concerning the denial of his therapeutic diet, the "trashing" of his property, his forced haircut, and the 7-day stepdown program. (*Id.* at 29-30.) Finally, he requests any information from his ICAR file concerning being labeled as a rat and the denial of his medical diet. (*Id.* at 30.) In their response, Defendants state that at his deposition, "Plaintiff clarified what he seeks through these records that he does not already have in other documents already provided—notes of his complaints about staff." (Doc. No. 216 at 3-4.) Counsel stated that she was "determining if any such information exists, and if it does, whether it exists in a format that can be provided to Plaintiff." (*Id.* at 4.)

This Court has previously indicated that inmate DC-14 and DC-15 files "typically contain much information that, if divulged to inmates, would threaten the orderly operation of the prison as well as the security of the inmates, staff members and the public." *Bailey v. McMahon*, No. 1:07-cv-2238, 2012 WL 1246147, at *9 (M.D. Pa. Apr. 12, 2012). Despite that, however, this Court has also directed the

production of non-confidential and relevant documents from within those files. *See id.*; *see also Paluch v. Dawson*, No. 1:06-cv-1751, 2008 WL 2785638, at *3 (M.D. Pa. July 17, 2008). The Court has recognized the same with respect to ICAR files. *See Alex v. Wetzel*, No. 1:13-cv-304, 2015 WL 418186, at *2-3 (M.D. Pa. Feb. 2, 2015). Defendants' response to Plaintiff's motion to compel appears to indicate that they are willing to produce any non-confidential and relevant documents to Plaintiff. Accordingly, Plaintiff's motion to compel will be granted as to these requests to the extent that Defendants will be directed to produce the portions of Plaintiff's DC-14, DC-15, and ICAR files that contain notes about Plaintiff's complaints about staff, to the extent such notes are relevant to his claims and are not confidential and to the extent they have not already been provided, spanning the period from March of 2015 through November of 2016.

### iii.     Fifteenth Set of Requests

Finally, Plaintiff takes issue with responses to four (4) more requests set forth in his fifteenth set of requests for production. The Court considers them below.

> 8. [Plaintiff] request[s] all information on who is the restraint chair manufacturer their instructions, manual, usage instructions and safety warnings that was used at S.C.I. Frackville from March 3 2015 until November 10 2016.

Defendants objected to this request on the basis that it was overbroad, irrelevant, exceeded the scope of the matters complained of, and asked for disclosure of information that would create safety and security concerns. The Court agrees. This

information has little bearing on Plaintiff's claims that Defendants were deliberately indifferent when they placed him in the restraint chair. Accordingly, the motion to compel will be denied with respect to this request.

> 9. [Plaintiff] request[s] all emails that speak on the initiation of [Plaintiff] getting his hair forcefully cut on 5.20.15 from defendants and any emails that speak on such incident. But not limited to defendants.
> 10. [Plaintiff] request[s] all emails that speak on the initiation of [Plaintiff] being placed on "7 day stepdown" from defendants and any emails that speak on 7 day stepdown but not limited to defendants. From March 3 2015—November 10 2016.
> 11. [Plaintiff] request[s] all emails that speak on [Plaintiff] being placed in any form of restraints while at S.C.I. Frackville from March 3 2015—November 10 2016.

Defendants objected to these requests on the basis that they were, among other objections, overbroad. The Court agrees. These requests are "significantly overbroad. And any such emails may contain information that is irrelevant, beyond the scope of this litigation, and that creates a security risk to prison personnel and/or other inmates." *Simmons v. Gilmore*, No. 2:17-cv-996, 2019 WL 3944325, at *3 (M.D. Pa. Aug. 21, 2019). Accordingly, the motion to compel will be denied with respect to these requests.

### 2. Second Motion to Compel (Doc. No. 234)

Plaintiff's second motion to compel seeks more complete responses to various discovery requests addressed to various Defendants. (Doc. No. 234.) The Court considers the requests at issue below.

### a.      Interrogatories to Defendant Tritt

Plaintiff takes issue with several responses to interrogatories posed to Defendant Tritt.  Those interrogatories and responses are as follows:

### i.      Second Set of Interrogatories

2. Was [Plaintiff] ever written up for a misconduct for hiding glass in his hair that you recall?

Response: I do not recall nor do I currently have access to that information to properly respond.

3. Did [Plaintiff] ever get caught with glass in his hair that you recall.

Response: I do not recall nor do I currently have access to that information to properly respond.

4. What dictated your [authorization] of [Plaintiff] being extended longer than 8 hours in the restraint chair, while at Frackville B.M.U.

Response: I do not have access to Plaintiff's inmate records and cannot respond to this request without the information in those records, nor can I confirm or deny whether Plaintiff was in a restraint chair for longer than eight hours.  During the time that I was Superintendent, the policy was revised on several occasions.  I am not able to respond without these records and I do not have access to the current policy/procedures.

With respect to these interrogatories, Plaintiff maintains that Defendant Tritt's answers are untruthful and that it appears that she "remembers what she wants to remember."  (Doc. No. 234-1 at 2.)  He also argues that her answer to the fourth interrogatory is vague and that Defendant Tritt does have access to such records because she still "frequents [the] DOC."  (*Id.* at 3.)  Defendants maintain that because "Defendant Tritt is now retired, there is nothing inappropriate about her indicating

that she does not have access to certain current DOC policies, many of which are confidential." (Doc. No. 241 at 3.)

While the Court agrees that Plaintiff's belief that Defendant Tritt is being untruthful is not a proper basis for a motion to compel, the Court also notes that "[p]arties must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). "If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and 'set forth the efforts he used to obtain the information.'" *Id.* (quoting *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977)). Under this standard, the Court concludes that Defendant Tritt's responses to the interrogatories set forth above are deficient because Defendant Tritt has "not disclosed whether [she is] in possession, custody, or control of any records or logs from which [she] can refresh [her] recollection or ascertain the requested information." *Oke v. Crowuther*, No. 1:18-cv-323, 2019 WL 4393388, at *2 (W.D. Pa. Sept. 14, 2019) (granting plaintiff's motion to compel based upon *Hansel*). Accordingly, the Court will grant Plaintiff' motion to compel (Doc. No. 234) to the extent Plaintiff seeks more complete responses to the interrogatories at issue noted above.

## ii.    Third Set of Interrogatories

1.  In your experience and scope of duties while working for the department of corrections why would [n] inmate be left in a cell naked or left naked in the restraint chair naked, if his clothes were never abused.

Response: Defendant objects to this request because it is overly broad, unduly burdensome and not proportional to the needs of this case.

Defendant further objects to this request to the extent it assumes facts not in evidence.

Defendant further objects to this request because it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Defendant's relative access to relevant information, the Defendant's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Without waiving the foregoing objections, each situation regarding the use of a restraint chair requires a determination made on a case-by-case basis and is dependent upon the individual's actions and responses to staff attempts to de-escalate the situation.

2.  To your knowledge were you or any D.O.C. [personnel] you oversaw at S.C.I. Frackville trained to place a smock blanket around an inmate's neck fastened by 2 flex cuffs on his neck while immobile in the restraint chair?

Response: Defendant objects to this request because it is overly broad, unduly burdensome and not proportional to the needs of this case.

Defendant further objects to this request to the extent it assumes facts not in evidence.

Defendant further objects to this request because it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Defendant's relative access to relevant information, the Defendant's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Without waiving the foregoing objections, as I recall, a smock blanket may be utilized to help keep an individual warm and provides a calming effect.  To the extent that flex cuffs were utilized, they would simply have been a means of keeping the blanket from falling off.

3. Is placing a smock blanket around an inmate's neck while he is in the restraint chair normal practice within Department of Corrections?

Response: Defendant objects to this request because it is overly broad, unduly burdensome and not proportional to the needs of this case.

Defendant further objects to this request to the extent it assumes facts not in evidence.

Defendant further objects to this request because it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Defendant's relative access to relevant information, the Defendant's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Without waiving the foregoing objections, SCI Frackville operated the first Behavioral Management Unit in the State of Pennsylvania and thus, the use of a smock blanket was an improvised means of providing comfort to an individual in crisis.

4. In your scope of duties as Superintendent at S.C.I. Frackville please reiterate why you would extend a[n] inmate past 8 hours in the restraint chair?

Response: Defendant objects to this request because it is overly broad, unduly burdensome and not proportional to the needs of this case.

Defendant further objects to this request to the extent it assumes facts not in evidence.

Defendant further objects to this request because it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Defendant's relative access to relevant information, the Defendant's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Without waiving the foregoing objections, I do not have access to current policies/procedures. During the time that I was Superintendent, policy did allow for extended time in a restraint chair under extraordinary circumstances.

7. Please reiterate who was involved in the planning and approval of forcefully cutting [Plaintiff's] hair?

Response: Defendant objects to this request because it is overly broad, unduly burdensome and not proportional to the needs of this case.

Defendant further objects to this request to the extent it assumes facts not in evidence.

Defendant further objects to this request because it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Defendant's relative access to relevant information, the Defendant's resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Without waiving the foregoing objections, I do not have access to documentation and/or Department of Corrections records and am unable to respond to this request.

With respect to these interrogatories, Plaintiff maintains that Defendant Tritt's answers are untruthful. (Doc. No. 234-1 at 4-7.) As noted above, Plaintiff's belief that Defendant Tritt has been untruthful is not the proper basis for a motion to compel. However, with respect to the seventh interrogatory, the Court concludes that it is deficient based upon *Hansel* because it does not set forth the efforts, if any, used to retrieve such information. Accordingly, the Court will deny the motion to compel with respect to interrogatories one, two, three, and four set forth above, but grant it with respect to the seventh interrogatory to the extent that Defendant Tritt will be directed to supplement her response to satisfy the standard set forth in *Hansel*.

### iii.    Fourth Set of Interrogatories

Although Plaintiff takes issue with Defendant Tritt's responses to some of his interrogatories set forth in his fourth set, he has not provided copies of those interrogatories and Defendants' responses. As noted above, Plaintiff's failure to do so does not comply with this Court's Local Rules. *See* M.D. Pa. L.R. 5.4(c); *see*

*also Njos*, 2017 WL 1228398, at *2.  Given Plaintiff's failure to comply with this

requirement, his motion to compel (Doc. No. 234) will be denied to the extent he

takes issue with Defendant Tritt's responses to interrogatories set forth in his fourth

set.

### b.     Requests for Production

### i.     Sixteenth Set

1. Plaintiff request[s] full mental health records from 3-3-15 to date.

Response: Defendants object to this request because it is overbroad and is not
relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the
needs of this case.

Defendants further object to this request to the extent that it seeks
information relating to matters beyond [those] that are set forth in the
complaint.  Because the scope of this matter is limited, all of the requested
records are not relevant to the claims at issue.

Defendants further object to this request to the extent that it seeks certain
information that documents the thoughts, processes, candid observations,
conclusions, and recommendations made or used by the DOC throughout the
investigation of a particular incident.  Such information constitutes security-
sensitive investigatory details that reveal investigatory techniques, credibility
determinations of fact finders as well as confidential prison security
information.

Defendants further object to this request to the extent that it seeks certain
information that if obtained, an inmate will be able to use such information to
adversely affect institutional safety and security and may also attempt to
manipulate future investigations, circumvent Department policy and
introduce contraband into institutions, or otherwise coerce or harass the
investigator or staff involved, which can have a "chilling" effect on future
investigations and the overall safety and security of the institutions.  Thus, the
disclosure of this information would create safety and security concerns and
may endanger the lives of involved staff and their families.

Defendants further object to this request to the extent that it seeks certain
documents    that   contain    evaluations,   diagnoses,   impressions,   and

recommendations submitted by mental health professionals. The evaluations contain entries and narratives covering mental status, reasoning capacity, emotional state, social adaptability, judgment ability, and the results of clinical tests. The value of these notations lies in their frankness. Were these files to be made available to inmates or the public, DOC professionals would tend to refrain from entering candid opinions and evaluations. Consequently, decision-makers would not have the benefit of honest observations from professionals in the field. Additionally, if an inmate knows how DOC staff will evaluate him and how particular responses are likely to be interpreted, he is capable of manipulating the resulting diagnosis. This can lead to many problems. First and foremost, the individual's situation may not be assessed accurately. Therefore, a valid course of rehabilitative treatment cannot be prescribed. Second, these inaccuracies can lead to completely improper institutional placement, and as a result, the inmate may be placed where he is a danger to others or *vice versa*. Third, the inaccurate information may cause him to be prematurely released from administrative custody, *e.g.*, to be placed into general population, and thus would present a risk to other inmates and staff.

If Plaintiff can narrow his request and/or identify what he seeks in these records with more specificity, Defendants will re-consider the request at that time.

In his reply brief, Plaintiff indicates that he "pursued his mental health records due to hunger strike and self harm which is not in medical records due to Defendants placing Plaintiff on 7-day stepdown making him earn his diet tray as Plaintiff was ordered a medical approved diet due to stomach issues after surgery." (Doc. No. 245 at 4.) Plaintiff maintains that he engaged in a hunger strike and self-harm because he was unable to eat the "loaf meal." (*Id.*) Plaintiff also states that he wants these records to "be used in evidence in future litigation." (Doc. No. 234-1 at 10.)

To the extent that Plaintiff seeks his mental health record to use in future litigation, the Court agrees that this is not a proper basis for a motion to compel.

Moreover, "courts have been receptive to the Department of Corrections' concerns in analogous cases, where inmates have sought to use civil litigation as a means of obtaining access to their mental-health records through the process of discovery." *Mercaldo v. Wetzel*, No. 1:13-cv-1139, 2016 WL 5851958, at *6 (M.D. Pa. Oct. 6, 2016) (citations omitted). However, Plaintiff has apparently narrowed his request for mental health records for the period of time in August of 2015 when he alleges he engaged in a hunger strike and self-harm during a seven (7) day stepdown. The Court concludes that such information, to the extent it is not privileged, is relevant to Plaintiff's Eighth Amendment claims of cruel and unusual treatment. Court shave previously authorized disclosure of sensitive but highly relevant prisoner mental health records subject to a "precondition of execution of confidentiality agreement," *Mincy v. Chmielewski*, No. 1:05-cv-292, 2006 WL 3042968, at *2 (M.D. Pa. Oct. 25, 2006), or an "appropriate protective order," which, if necessary, "restrict[s] the disclosure of certain information." *Gevas v. McLaughlin*, 798 F.3d 475, 486 (7th Cir. 2015).

In light of the foregoing, the Court will grant Plaintiff's motion to compel with respect to this request for production and will direct Defendants to answer this request for production with respect to Plaintiff's mental health record during the period of time in August of 2015 when he alleges he engaged in a hunger strike and self-harm during a seven (7) day stepdown. Thus, Plaintiff should be provided the

opportunity to inspect any non-privileged portion of his mental health record for the period set forth above. *See Johnson v. Miskell*, No. 1:16-cv-841, 2018 WL 2933455, at *4 (M.D. Pa. June 12, 2018) (concluding same).

Plaintiff also states that he never received pages four (4) and (5) of Defendants' responses to his sixteenth set of requests for production and therefore requests the Court to grant his motion to compel as to his second and third requests "in all aspects." (Doc. No. 234-1 at 10.) Defendants "assume this was a copying error and will resend their responses and objections." (Doc. No. 241 at 5.) Without a complete copy of these requests and Defendants' responses thereto, however, the Court cannot at this time conclude whether production of the information Plaintiff seeks should be compelled. Accordingly, the motion to compel (Doc. No. 234) will be denied with respect to these requests. This denial is without prejudice to Plaintiff's right to renew his arguments in a properly-filed motion to compel regarding these requests for production.

### ii.    Seventeenth Set

2. Plaintiff request[s] all inmate abuses filed by inmates in the B.M.U. at S.C.I. Frackville from 3-31-15—11-10-16.

Response: Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.
    Defendants further object to this request as not being proportional to the needs of this case.
    Defendants further object to this request to the extent it assumes facts not in evidence.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2013 Inmate Handbook, p. 28 § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5. ("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

5. Request all PREA allegations filed by B.M.U. inmates while at Frackville from 3-3-15—11-10-16.

Response: Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent it assumes facts not in evidence.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object as inmates are not permitted to access records related to other inmates. Possession of such records would constitute contraband. *See* 2013 Inmate Handbook, p. 28 § D(3)(o). *See also* Department Policy DC-ADM 003, "Release of Information Policy," Section IV, subsection A.5. ("An inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself.").

Plaintiff argues that he requires this information to show a pattern of abuse by Defendants. (Doc. No. 234-1 at 12.) Plaintiff also suggests that other inmates may have filed grievances regarding the abuse of Plaintiff. (*Id.*) He maintains further that such documents may "identify witnesses for Plaintiff in future litigation." (*Id.*) Defendants argue that "[c]ourts have consistently rejected these overly broad

requests, in light of the myriad of security, privacy, and other concerns raised by these requests." (Doc. No. 241 at 5.)

As noted above, Plaintiff's attempt to obtain such information for possible future litigation is an impermissible use of a motion to compel. Moreover, this Court has "rejected these kinds of discovery requests as being not only overly broad, but unduly infringing upon the privacy rights of other inmates." *Williams v. Wetzel*, No. 1:17-cv-79, 2019 WL 1206061, at *3 (M.D. Pa. Mar. 14, 2019) (collecting cases). In keeping with those decisions, the Court concludes that Plaintiff's request for documents containing information about other inmates is prohibited. "These discovery requests are of questionable relevance and implicate importance privacy and security interest. Moreover, the discovery of such information poses a security risk to both inmates and to any correctional staff who may intervene to stop such a risk." *Id.* Accordingly, Plaintiff's motion to compel will be denied with respect to these requests.

### iii. Eighteenth Set

1. Plaintiff request[s] the video produced of assault of Plaintiff that took place on 2-12-16. Identified in OSII #2016-A169 as 1 DVD (video of Assault) on Req-13-Def00063.

Response: Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.
Defendants further object to this request as not being proportional to the needs of this case.
Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint.

Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Without waiving the foregoing objections, Defendants produce video identified in 2016-A-169 from February 12, 2016, which has been marked for production as Req 18-DEF000001.

Defendants indicate that they produced this video to Plaintiff, which Plaintiff concedes. (Doc. No. 241 at 6.) Accordingly, Plaintiff's motion to compel will be denied as moot with respect to this request.

4. Provide the hospital documents (excluding redacted personal information) on Defendant Co[r]by concerning the incident involving his finger on 4-9-15 with Plaintiff.

Response: Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate future investigations, circumvent Department policy and introduce contraband into institutions, or otherwise coerce or harass the investigator or staff involved, which can have a "chilling" effect on future investigations and the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff and their families.

Defendants further object to this request because the information sought exceeds the scope of the matters complained of in, and temporal scope applicable to, the instant Complaint.

Without waiving the foregoing objections, Defendants have already produced documents related to Defendant Corby concerning the incident on April 9, 2015. See documents marked as Req 1-DEF000090-Req 1-DEF000189 and OSII 2015-A-235 marked for production as Req 14-DEF000001-Req 14-DEF000149.

Plaintiff argues that the documents Defendants have produced do not contain hospital records or any records of Defendant Corby "receiving a[n] injury that required any hospitalization." (Doc. No. 234-1 at 13.) The Court, however, agrees with the concerns set forth by Defendants in their objections to Plaintiff's request for documents. Accordingly, the Court will deny Plaintiff's motion to compel with respect to this request for production.

### iv. Twentieth Set

1. Plaintiff request[s] a full copy of deposition transcript [taken] by Defendants on 9.30.19.

Response: Defendants object to this request as not being proportional to the needs of this case.
   Without waiving the above objections, your deposition transcript must be purchased from the court reporting service. In case you would like to write them to inquire about cost, I am providing the following information that you will need when contacting them [name and address of company follow].

Plaintiff asserts that he cannot purchase the transcript because he has a negative balance in his prison account. (Doc. No. 234-1 at 14.) In his reply brief, Plaintiff states that he desires a copy of the transcript "to correct mistakes and use as evidence in civil litigation. Defendants may/can use such in trial in which Plaintiff may need to refute or correct the record." (Doc. No. 245 at 4.)

Defendants assert that "it is well-settled that an inmate's IFP status does not entitle him to free discovery, including deposition transcripts." (Doc. No. 241 at 6.) This Court has previously recognized that, as a general rule, "[c]ivil litigants

generally bear their own deposition expenses initially. A defendant is not required to advance the plaintiff's deposition expenses merely because the plaintiff is unable to pay for such costs and fees." *Badman v. Stark*, 139 F.R.D. 601, 606 (M.D. Pa. 1991). Here, however, Plaintiff's request "does not concern expenses to be incurred by an indigent plaintiff seeking to *take* a deposition. Here, the indigent plaintiff merely seeks a copy of stenographic transcripts of discovery proceedings conducted *by the defendants*, for which they have already paid stenographic fees." *Davis v. Pa. Dep't of Corr.*, No. 1:16-cv-515, 2018 WL 2292755, at *3 (M.D. Pa. May 18, 2018). "Such a request is not at all unreasonable; the usual practice is for 'the other side' to be given a copy of a deposition scheduled by the opponents, once it has been transcribed." *Id.* at 606. Given this, the Court will grant Plaintiff's motion to compel with respect to this request and direct Defendants to provide a copy of Plaintiff's deposition transcript to him.

2. Request color photos of all discovery sent to Plaintiff before July 3, 2019.

Response: Defendants object to this request as not being proportional to the needs of this case.

Defendants further object to this request as overly broad and unduly burdensome.

Without waiving the above objections, Defendants have already produced documents, color photographs and videos related to Plaintiff's claims in response to other requests for production. Therefore, Defendants have met their burden by producing voluminous documentation in response to previous requests by Plaintiff. Plaintiff is directed to review all documents produced to date. By way of further response, if Plaintiff will specifically identify the photos sought, by bates number, Defendants will attempt to provide color copies to the extent they exist.

3. Request discovery request/responses #1 (the whole discovery request regarding paperwork) #2 #3 #4 #5 #6 #7 #8 #9 #10 #11 #12 #13 #14 #15 (due to it [being] urinated on July 3, 2019)

Response: Defendants object to this request as not being proportional to the needs of this case.

Without waiving the above objections, Defendants have already produced supplemental copies of documentation in response to Plaintiff's claims that documentation was lost by DOC. Likewise, DOC has, at its own expense, replaced Plaintiff's documents after the above described incident. Therefore, Defendants have met their burden by producing voluminous documentation in response to previous requests by Plaintiff. Plaintiff is directed to review all documents produced to date.

4. Photograph of restraint chair Plaintiff was placed in while at S.C.I. Frackville.

Response: Defendants object to this request because it is overbroad and is not relevant to the claims or defenses of any party.

Defendants further object to this request as not being proportional to the needs of this case.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use and study such information to adversely affect institutional safety and security and may also attempt to manipulate similar restraints used on him, including those in the restraint chair in the future. It may also permit an inmate to manipulate future investigations, circumvent Department policy and introduce contraband into institutions, or otherwise coerce or harass the investigator or staff involved, which can have a "chilling" effect on future investigations and the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff and their families.

Defendants further object to this request because the information sought exceeds the scope of the matters complained of in, and temporal scope applicable to, the instant Complaint.

Without waiving the above objections, the restraint chair is visible in photographs and in the video already produced.

Plaintiff asserts that Defendants have not replaced the discovery that was damaged in July of 2019. (Doc. No. 234-1 at 14-15.) Plaintiff also asserts that photographs and videos do not show the whole restraint chair. (*Id.* at 15.) Defendants assert that they have twice sent Plaintiff documents, including black and white and color photographs, and "it should not be their responsibility to send him these documents for a *third* time." (Doc. No. 241 at 6-7.) The Court agrees. Accordingly, Plaintiff's motion to compel will be denied with respect to these requests.

### c. Requests for Admission

Finally, Plaintiff takes issues with several of Defendants' responses to his requests for admission. (Doc. No. 234-1 at 16-18, 55-60; Doc. No. 234-2 at 1-7.) Plaintiff argues that Defendants "did not fully answer admissions and did not answer truthfully [because they] denied all." (Doc. No. 234-1 at 16-18.) Defendants assert that the fact that they denied Plaintiff's requests for admission "does not constitute a proper basis for a motion to compel." (Doc. No. 241 at 7.)

Federal Rules of Civil Procedure 36(a)(6) and 37(c)(2) provide the only options available to parties seeking to challenge what they believe are untruthful responses to requests for admission. Rule 36(a)(6) "speaks to the *form* of [an] answer or objection [submitted by a responding party], not its substance." *Point*

*Blank Solutions Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 742657, at *3 (S.D. Fla. Feb. 24, 2011). Rule 37(c)(2), however, speaks to the substance of a response, not its form. Neither Rule, however, sets forth a pre-trial procedure that "authorize[s] a court to inquire into the substantive accuracy of [a] denial." *Id.* Moreover, the Third Circuit has concluded that when disputed matters "are requested to be admitted a denial is a perfectly reasonable response," and a single-word response of "denied" is often deemed sufficient. *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988). Given this, the Court agrees with Defendants that Plaintiff's dissatisfaction with their responses to his requests for admission is not a proper basis for a motion to compel. Accordingly, his motion to compel (Doc. No. 234) will be denied to the extent he seeks further answers to his requests for admission.

### C. Motion to Pursue Additional Interrogatories (Doc. No. 221)

Plaintiff has filed a motion seeking leave to submit five (5) additional interrogatories to Defendants Tritt and Albert. (Doc. No. 221.) Plaintiff submits that he has exceed the twenty-five (25) question limit "due to multiple incidents over a wide span of time." (*Id.*) Both the Federal Rules of Civil Procedure and this Court's Local Rules limit parties to no more than twenty-five (25) interrogatories to another party without leave of Court. *See* Fed. R. Civ. P. 33(a)(1); M.D. Pa. L.R. 33.3. Defendants have not opposed Plaintiff's motion. Plaintiff indicates that the

additional interrogatories are necessary because he "is indigent and cannot afford to [depose] Defendants." (Doc. No. 222 at 1.) For good cause shown, the Court will grant Plaintiff's motion to pursue additional interrogatories. (Doc. No. 221.) Plaintiff may submit five (5) additional interrogatories to Defendant Tritt and five (5) additional interrogatories to Defendant Albert.

### D. Motion to Pursue Correspondence with Witnesses (Doc. No. 227)

Plaintiff has filed a motion to pursue correspondence with five (5) inmate witnesses. (Doc. No. 227.) Plaintiff indicates that he seeks to correspond with these individuals to "obtain affidavits that Plaintiff had in his property that ha[ve] since been discarded." (*Id.*) Plaintiff indicates that these inmates "can provide personal accounts of the abuse endure[d] by Plaintiff, some endured the same." (Doc. No. 229 at 2.)

Defendants have partially opposed Plaintiff's motion. (Doc. No. 240.) Attached to their motion is a copy of DC-ADM 803, *Inmate Mail and Incoming Publications Policy*. (Doc. No. 240-1.) The Court takes notice that DC-ADM 803 generally prohibits inmates from corresponding with one another "unless approval is given pursuant to this policy." (*Id.* at 8.) Inmates who are in disciplinary custody status, such as the Restricted Housing Unit ("RHU"), are prohibited from engaging in such communications. (*Id.* at 10.) Defendants assert that "Plaintiff has not indicated that he sought approval from the DCO pursuant to this process." (Doc.

No. 240 at 3.) In his reply brief, Plaintiff indicates that he has "aimed to correspond with witnesses through DOC in which [he is] told this is only done when it involves immediate family. If it concerns legal matters [he is] to obtain a court order." (Doc. No. 244 at 2.)

Defendants aver, however, that "the DOC will permit [Plaintiff] to correspond with inmates in other institutions if the communications to the other inmates are sent through the office of [the Attorney General]." (Doc. No. 240 at 3.) Counsel states that "by permitting the undersigned to monitor such correspondence, the undersigned will have an opportunity to object to any communications between the inmates that are not relevant to [Plaintiff's] claims and to maintain the safety and security concerns of the DOC as intended by its policy." (*Id.* at 4.) Plaintiff objects to this limitation, arguing that "allowing Defendants to guide the process of Plaintiff corresponding with witnesses can/will deflate Plaintiff's civil suit and hinder Plaintiff in litigating such case as Defendants will have all evidence and [be] able to defend/refute even before Plaintiff receives such to bring the facts to the Court's attention." (Doc. No. 244 at 2.)

While the Court understands Plaintiff's concerns, the Court is confident that Defendants and their counsel will not seek to take unfair advantage of any evidence and affidavits that Plaintiff may obtain in his correspondence with other inmates. Furthermore, if Plaintiff intended to rely upon such affidavits to either support or

oppose any dispositive motions filed in this matter, he would be required to provide copies of such to counsel for Defendants. In order to maintain the DOC's safety and security concerns, the Court will grant Plaintiff's motion (Doc. No. 227) to the extent that Plaintiff may correspond with the five (5) inmates named within his motion only if such correspondence is sent via counsel for Defendants (the Office of the Attorney General). Return correspondence from those inmates, if sent, must be routed through counsel for Defendants as well.

### E. Motion for Extension of Time to Complete Discovery (Doc. No. 230)

Plaintiff has also filed a motion for an extension of time to complete discovery. (Doc. No. 230.) As noted *supra*, the parties were initially directed to complete discovery by December 1, 2019. That deadline, however, was stayed while Plaintiff's appeal to the Third Circuit was pending. Defendants have not opposed Plaintiff's motion. The Court may modify a scheduling order "for good cause." *See* Fed. R. Civ. P. 16(b)(4). As noted above, the Court has granted Plaintiff permission to submit additional interrogatories to Defendants Tritt and Albert and has also granted him permission to correspond with inmate witnesses regarding his claims. Accordingly, the Court finds that good cause exists to extend the discovery deadline in this matter. The Court, therefore, will grant Plaintiff's motion (Doc. No. 230) and direct the parties to complete discovery by April 15, 2020. The parties will also be directed to file any dispositive motions by May 15, 2020. The parties are advised,

however, that **no** further extensions of the discovery and dispositive motions deadlines will be granted.[2]

### F.     Motion to Appoint Counsel (Doc. No. 236)

Plaintiff has filed another motion to appoint counsel in this matter.  (Doc. No. 236.)  He again asserts that he is being denied discovery, his claims are complex, he has limited access to the law library, and that a trial will likely involve conflicting testimony.  (*Id.*; Doc. No. 238.)   Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1).  *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002).  In *Tabron v.Grace*, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants.  *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir. 1993).  Such factors include the plaintiff's ability to present his case, the complexity of the legal and discovery issues in the case, the amount of factual investigation that will be required, the necessity of expert witnesses, and whether "witness credibility is a key issue."  *Id.*  Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some

---

[2] Plaintiff has submitted a letter indicating that staff at SCI Forest are not permitting him to "view [his] discovery videos consistently."  (Doc. No. 243.)  The Court is confident that extending the discovery period will permit Plaintiff adequate time to view such videos.  Moreover, the Court will direct counsel for Defendants to communicate with the relevant officials at SCI Forest to ensure that Plaintiff's discovery is not withheld and that he is able to view such in a timely and consistent manner.

arguable merit in fact and law." *Montgomery*, 294 F.3d at 498-99 (citing *Tabron*, 6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement.'" *Nuñez v. Wertz*, No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (citing *Montgomery*, 294 F.3d at 501).

Upon consideration of the foregoing, the Court concludes that the *Tabron* factors do not warrant appointing counsel at this time. Plaintiff has the apparent ability to read, write, and understand English. Moreover, as the Court has previously noted, Plaintiff has been able to file several documents in this matter, including, but not limited to, the complaint and amended complaint, briefs in opposition to the prior motions to dismiss and motions for summary judgment, and several filings regarding discovery. While Plaintiff indicates that he has been denied discovery and the ability to view discovery, the Court is confident that the extension of the discovery period will allow Plaintiff adequate time to review the discovery that has been provided to him. Additionally, the legal issues in this case are not overly complex and this Court's liberal construction of *pro se* pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), coupled with Plaintiff's apparent ability to litigate this action *pro se*, militate against the appointment of counsel. The Court notes further that "it does

not have a large group of attorneys who would represent this action in a *pro bono* capacity." *Wilson v. Horowitz*, No. 3:18-cv-2237, 2019 WL 6716122, at *1 (M.D. Pa. Dec. 9, 2019). Consequently, the Court cannot say, at this point, that Plaintiff will suffer substantial prejudice if he is forced to prosecute this action on his own. In the event that future proceedings demonstrate the need for counsel, the matter may be reconsidered by the Court either *sua sponte* or upon a motion properly filed by Plaintiff.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's motion to lodge sanctions against Defendants (Doc. No. 214) will be denied. Plaintiff's motions to compel and pursue sanctions (Doc. Nos. 204, 234) will be granted in part and denied in part, as detailed in the Order that follows this Memorandum. Plaintiff's motion to pursue additional interrogatories (Doc. No. 221) will be granted, and Plaintiff may submit five (5) additional interrogatories to Defendant Tritt and five (5) additional interrogatories to Defendant Albert. Plaintiff's motion to pursue correspondence with witnesses (Doc. No. 227) will be granted to the extent that Plaintiff may correspond with the five (5) inmates named within his motion only if such correspondence is sent via counsel for Defendants (the Office of the Attorney General). Return correspondence from those inmates, if sent, must be routed through counsel for Defendants as well. Plaintiff's motion for an extension of time to complete discovery (Doc. No. 230)

will also be granted.  The parties are directed to complete discovery by April 15, 2020 and file any dispositive motions by May 15, 2020.  The parties are advised that **no** further extensions of the discovery and dispositive motions deadlines will be granted.  Plaintiff's motion to appoint counsel (Doc. No. 236) will be denied without prejudice.  An appropriate Order follows.

S/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: February 20, 2020