IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN EASLEY, | : | |
| Plaintiff | : | |
| | : | No. 1:17-cv-930 |
| v. | : | |
| | : | (Judge Rambo) |
| BRENDA TRITT, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court are *pro se* Plaintiff Warren Easley ("Plaintiff")'s motion for spoliation, to compel, and for sanctions (Doc. No. 279) and motion to pursue sanctions/spoliation (Doc. No. 281). The motions are fully briefed and ripe for disposition.

## I.   BACKGROUND

Plaintiff is proceeding on a civil rights complaint filed pursuant to 42 U.S.C. § 1983 against several correctional officers and medical staff members at SCI Frackville, alleging various incidents of cruel and unusual punishment. (Doc. No. 11.) By Memorandum and Order entered on August 7, 2018, the Court: (1) granted Defendant Shiptoski's motion to dismiss/motion for summary judgment and dismissed him from this action; (2) granted Defendant Boyce's motion to dismiss/motion for summary judgment and dismissed him from this action; (3) denied Defendants Albert, Boyce, Corby, Dowd, Gregoire, Kostinko, Miller, and Tomcavage's motions to dismiss/motions for summary judgment for Plaintiff's

failure to exhaust administrative remedies; (4) granted Defendant Keller's motion to dismiss/motion for summary judgment for Plaintiff's failure to exhaust administrative remedies with respect to his claim that Keller called him a "rat"; (5) granted Defendant Marsh's motion to dismiss/motion for summary judgment for Plaintiff's failure to exhaust administrative remedies and dismissed Marsh from this action; (6) granted Defendant Miller's motion to dismiss/motion for summary judgment on the basis that Plaintiff's 2014 haircut exemption claim was barred by the statute of limitations; (7) granted Defendant Newberry's motion to dismiss/motion for summary judgment and dismissed him from this action; (8) denied the motion to sever filed by several Department of Corrections ("DOC") inmates; and (9) denied Plaintiff's motion for default judgment and dismissed Defendant Dr. Pandya from this action without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (Doc. Nos. 81, 82.)  The remaining DOC Defendants filed their answer on August 28, 2018.  (Doc. No. 88.)  In a Memorandum and Order dated July 23, 2019, the Court directed the parties to complete discovery by December 1, 2019.  (Doc. Nos. 190, 191.)

Plaintiff subsequently filed several discovery-related motions.  In a Memorandum and Order dated February 20, 2020, the Court granted in part and denied in part Plaintiff's two motions to compel, denied his motions seeking sanctions, granted his motion to pursue additional interrogatories, granted his motion

to pursue correspondence with witnesses to the extent that such correspondence needed to be sent via counsel for Defendants (the Office of the Attorney General). (Doc. Nos. 248, 249.)  With respect to the motions to compel, the Court directed Defendants to provide to Plaintiff: (1) any relevant, functional video recordings that had yet to be turned over; (2) any relevant medical records pertaining to specific dates that had yet to be turned over; (3) any existing photographs of the use of O.C. spray during a use of force incident on August 5, 2015; (4) any audio recordings and inmate abuse complaints regarding the use of force on December 22, 2015; (5) incident reports and investigative reports regarding the use of a restraint chair on May 12, June 19, and August 17, 2015; (6) any relevant documents concerning the use of an intermediate restraint belt on March 23, 2015; (7) any investigative reports concerning Plaintiff's placement in a "dry cell" from June 22-24, 2015 and July 28-August 1, 2015; (8) a copy of the version of DC-ADM 610 in place during the relevant period; (9) a declaration fully summarizing policies regarding the videotaping of use of force events as well as handling requests for preservation of video, to the extent such were set forth in DOC Policies 6.5.1 and 6.3.1; (10) portions of Plaintiff's DC-14, DC-15, and ICAR files containing notes about Plaintiff's complaints about staff, to the extent they were not confidential, from March 2015 through November 2016; (11) more complete responses to four of Plaintiff's interrogatories to Defendant Tritt; (12) the opportunity to inspect any non-privileged

portion of his mental health record for the period of time in August 2015 when Plaintiff alleges he engaged in a hunger strike and self-harm; and (13) a copy of Plaintiff's deposition transcript. (*Id.*)

The Court also denied without prejudice Plaintiff's motion to appoint counsel and granted his motion for an extension of time to complete discovery, directing the parties to complete discovery by April 15, 2020 and file and dispositive motions by May 15, 2020. (*Id.*)  The Court also directed counsel for Defendants to communicate with the relevant officials at SCI Forest to ensure that Plaintiff can view his discovery in a timely and consistent manner. (*Id.*)

Plaintiff subsequently filed another motion to compel and pursue sanctions (Doc. No. 250), a motion for reconsideration of the Court's February 20, 2020 Memorandum and Order (Doc. No. 253), and a motion requesting an Order to view discovery (Doc. No. 261).  In a Memorandum and Order dated April 20, 2020, the Court granted Plaintiff's motion to compel to the extent that Defendants were directed to produce a more complete response to interrogatory one in Plaintiff's first set of interrogatories to Defendant Corby. (Doc. Nos. 267, 268.)  The Court denied Plaintiff's motion in all other respects, denied his motion for reconsideration, and denied his motion requesting an Order to view discover to the extent Plaintiff requested that the Court order SCI Forest officials to prioritize his litigation needs. (*Id.*)  The Court, however, granted Plaintiff's motion (Doc. No. 261) to the extent

that the discovery and dispositive motions deadlines were extended to May 31, 2020

and July 31, 2020, respectively.  (*Id.*)  The Court cautioned Plaintiff that he "should

not use this final extension of the discovery deadline as a chance to pursue requests

for discovery that are duplicative of discovery materials that he has already received

or of requests that have already been denied."  (Doc. No. 268.)  Plaintiff was also

cautioned not to "pursue requests that are irrelevant to the above-captioned case."

(*Id.*)

Plaintiff filed a motion to compel and to pursue sanctions/spoliation on April

27, 2020.  (Doc. No. 269.)  Plaintiff asserted that spoliation has occurred because

Defendant have not produced evidence that is unfavorable to them.  (*Id.* at 1.)

Specifically, Plaintiff asserted that Defendants have not provided audio recordings

from an investigation into a use of force incident on December 22, 2015.  (Doc. No.

271 at 1.)  He also sought video and audio from a use of the restraint chair on August

17, 2015.  (*Id.* at 2.)  He sought sanctions in the amount of $750.00 and for

Defendants to be "banned from bringing evidence" to support dispositive motions

or during a trial regarding his claims based on events that occurred on April 8-9,

2015, May 20, 2015, August 17, 2015, December 22, 2016, and February 12, 2016.

(Doc. No. 269.)  Plaintiff also asked that the Court order Defendants to "state what

policy iterate[s] preservation of videos/documents when requested and state a

declaration that fully summarize[s], explain[s], and iterate[s] such policy of

preservation of videos/documents." (*Id.*) In support of that request, Plaintiff avers that although the Court ordered Defendants to provide Plaintiff a declaration fully and accurately summarizing policies regarding the videotaping of use of force events and the handling of requests for preservation of video, to the extent such were sent forth in DOC Policies 6.5.1 and 6.3.1, Defendants' declaration in response "did not speak on [a] policy concerning inmates requesting preservation of videos." (Doc. No. 271 at 3-4.) In a Memorandum and Order dated May 26, 2020, the Court granted Plaintiff's motion to the extent that Defendants were directed to provide Plaintiff a declaration that "fully and accurately summarizes any guidelines and policies that the DOC has regarding the preservation of video and documents upon receipt of an inmate's request that such evidence be preserved" and denied the motion as to all other requests. (Doc. Nos. 277, 278.)

Plaintiff filed his motion for spoliation, to compel, and for sanctions on June 8, 2020. (Doc. No. 279.) He filed his motion to pursue sanctions/spoliation on June 22, 2020. (Doc. No. 281.) The Court considers each motion below.

## II.  DISCUSSION

### A.  Motion for Spoliation, to Compel, and for Sanctions (Doc. No. 279)

In his first motion, Plaintiff seeks the production of video from planned uses of force against him, arguing that such video should have been preserved per DOC policy. (Doc. No. 279.) Plaintiff also requests that the Court compel Defendants to

produce certain documents in response to his requests for production.  (*Id.*)  He also

requests that the Court direct Defendants to comply with the Court's February 20,

2020 Order directing that certain audio and video from August 17, 2015 be turned

over to him.  (*Id.*)  Plaintiff also seeks an Order compelling Defendants to respond

to certain interrogatories and admissions.  (*Id.* at 4.)  He seeks sanctions in the

amount of $750.00 as well as a finding of spoliation precluding Defendants from

using certain evidence in support of any forthcoming summary judgment motion and

at trial.  (*Id.* at 1.)

### 1.    Requests Regarding Video and Related Documents

Plaintiff first faults Defendants for not producing any video or related

documents concerning his various placements in a dry cell.  (Doc. No. 280 at 1-3.)

He also suggests that Defendants have not produced video footage regarding periods

of exercise in the restraint chair and the removal of a restraint belt.  (*Id.* at 3-6.)  In

response, Defendants state that "[t]he Court has already addressed the video footage

issue on prior occasions and ruled that spoliation and sanctions were not warranted

because Defendants have turned over the video that was functional and have not

acted in bad faith."  (Doc. No. 290 at 4.)  Defendants indicate further that with

respect to incident reports and video, they "have produced what they have."  (*Id.* at

5.) Plaintiff, however, believes that more should have been produced.  As the Court

has previously noted on several occasions in this matter, the Court "cannot compel

the production of things that do not exist. Nor can the [C]ourt compel the creation of evidence by the parties who attest that they do not possess the material sought by an adversary in litigation." *Amfosakyi v. Frito Lay*, No. 1:11-cv-651, 2011 WL 5593133, at *3 (M.D. Pa. Nov. 17, 2011). Despite Plaintiff's belief that more videos and documents should be in existence, the Court cannot direct Defendants to produce items that simply do not exist. Accordingly, Plaintiff's motion (Doc. No. 279) will be denied with respect to his requests regarding video footage and related incident reports.

## 2. Request for Audio and Video

In an Order dated February 20, 2020, the Court, *inter alia*, directed Defendants to turn over audio and video recordings from incidents that occurred on August 17, 2015 and December 22, 2015. (Doc. No. 249.) Plaintiff claims that on May 11, 2020, Defendants stated that they would be uploading the relevant files to a CD and mailing that CD to Plaintiff. (Doc. No. 280 at 6.) Plaintiff claims that he has not received these files. (*Id.*) Such files were to include the audio recording of an interview with Defendant Kistinka concerning a use of force incident on December 22, 2015. *See Easley v. Tritt*, No. 1:17-cv-930, 2020 WL 836695, at *5 (M.D. Pa. Feb. 20, 2020). Defendants have not specifically addressed this request in their oppositional brief, only stating that they "continue to comply with Plaintiff's discovery requests in good faith." (Doc. No. 290 at 5.) The Court's February 20,

2020 Order, however, directed Defendants to produce this information before April

15, 2020.  (Doc. No. 249.)  In light of Defendants' failure to specifically respond to

this argument, the Court will grant Plaintiff's motion (Doc. No. 279) to the extent

that Defendants will be directed to produce any outstanding video and audio files

from August 17, 2015 and December 22, 2015 to Plaintiff within fourteen (14) days.

The Court, however, will deny Plaintiff's motion to the extent Plaintiff seeks

sanctions because there is no evidence before the Court demonstrating that

Defendants acted in bad faith such that the imposition of sanctions would be

warranted.  *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 n.3 (3d Cir. 2008).

### 3.   Requests for Production

Next, Plaintiff seeks an Order compelling Defendants to respond to his first

four requests for production set forth in his twenty-second set of requests.  (Doc. No.

280 at 7-10.)  Those requests, and Defendants' responses thereto, are as follow:

> 1. Plaintiff request Defendants to fully summarize, explain and iterate
> what policy reiterates inmates being placed in restrain[t] chair and
> extended in restraint chair after 4-8 hours (Note not asking for policy
> requesting to identify policy)
>
> Response: OBJECTION.  Defendants object to this request because it
> seeks information that is not relevant to the claims in this matter.
>    Defendants further object to this request because it is overly
> broad and unduly burdensome.
>    Defendants further object to this request to the extent that
> Plaintiff seeks information and not production of a document.
>    Defendants further object to this request to the extent that it seeks
> information relating to matters beyond that are set forth in the

complaint.  Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request as not being proportional to the needs of this case.  The burden and expense on Defendants in searching for and producing the documents requested outweigh any benefit the documents as requested could confer on Plaintiff in his prosecution of this lawsuit.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security of the institutions.  Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff.  The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons.  Certain policies, procedures manuals, and rules are confidential and cannot be disclosed to inmates.  Inmates are not entitled to copies of confidential policies and procedures.

Without waiving any objections, see Defendants' responses to your fifteenth (15th) request for production wherein you identified DOC policies related to inmate placement in a restraint chair and the declaration by Scott Woodring as ordered by the Court.  Additionally, to the extent that Plaintiff seeks to have the Defendants create a separate declaration to explain the process and procedures for inmate placement in a restraint chair, the rules do not require Defendants to create and produce documents that do not exist.

2. [Plaintiff] request[s] Defendants to provide a declaration that fully explain[s,] summarize[s,] and iterate[s] the placement of inmates in restraint chair and the extension of inmates after 4-8 hours in restraint chair.

Response: OBJECTION.  Defendants object to this request because it seeks information that is not relevant to the claims in this matter.

Defendants further object to this request because it is overly broad and unduly burdensome.

Defendants further object to this request as not being proportional to the needs of this case.  The burden and expense on Defendants in searching for and producing the documents requested

outweigh any benefit the documents as requested could confer on Plaintiff in his prosecution of this lawsuit.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff. The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons. Certain policies, procedures manuals, and rules are confidential and cannot be disclosed to inmates. Inmates are not entitled to copies of confidential policies and procedures.

Without waiving any objections, to the extent that Plaintiff seeks to have the Defendants create a separate declaration to explain the process and procedures for inmate placement in a restraint chair, the rules do not require Defendants to create and produce documents that do not exist. See the declaration by Scott Woodring, supplied as ordered by the Court.

3. [Plaintiff] request[s] Defendants to fully summarize, explain and iterate what policy reiterates inmates being placed in "dry cell placement" (Note not asking for policy requesting to identify policy).

Response: OBJECTION. Defendants object to this request because it seeks information that is not relevant to the claims in this matter.

Defendants further object to this request because it is overly broad and unduly burdensome.

Defendants further object to this request to the extent that Plaintiff seeks information and not production of a document.

Defendants further object to this request to the extent that it seeks information relating to matters beyond that are set forth in the complaint. Because the scope of this matter is limited, all of the requested records are not relevant to the claims at issue.

Defendants further object to this request as not being proportional to the needs of this case. The burden and expense on Defendants in searching for and producing the documents requested outweigh any benefit the documents as requested could confer on Plaintiff in his prosecution of this lawsuit.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff. The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons. Certain policies, procedures manuals, and rules are confidential and cannot be disclosed to inmates. Inmates are not entitled to copies of confidential policies and procedures.

Without waiving any objections, see Defendants' responses to your fifteenth (15th) request for production wherein you identified confidential DOC policies related to inmate placement in a dry cell and the declaration by Scott Woodring, supplied as ordered by the Court. Additionally, to the extent that Plaintiff seeks to have the Defendants create a separate declaration to explain the process and procedures for inmate placement in a restraint chair, the rules do not require Defendants to create and produce documents that do not exist.

4. [Plaintiff] request[s] the defendants to provide [a] declaration that fully explain[s], summarize[s] and iterate[s] the placement of inmates in dry cell and the removal of dry cell placement.

Response: OBJECTION. Defendants object to this request because it seeks information that is not relevant to the claims in this matter.

Defendants further object to this request because it is overly broad and unduly burdensome.

Defendants further object to this request as not being proportional to the needs of this case. The burden and expense on Defendants in searching for and producing the documents requested outweigh any benefit the documents as requested could confer on Plaintiff in his prosecution of this lawsuit.

Defendants further object to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns

and may endanger the lives of involved staff. The Department has adopted various policies and rules regarding the care, custody, and control of the inmates within its institutions that it keeps confidential for security reasons. Certain policies, procedures manuals, and rules are confidential and cannot be disclosed to inmates. Inmates are not entitled to copies of confidential policies and procedures.

Without waiving any objections, see Defendants' responses to your fifteenth (15th) request for production wherein your identified confidential DOC policies related to inmate placement in a dry cell and the declaration by Scott Woodring, supplied as ordered by the Court. Additionally, to the extent that Plaintiff seeks to have Defendants create a separate declaration to explain the process and procedures for inmate placement in a [dry cell], the rules do not require Defendants to create and produce documents that do not exist.

(Doc. No. 279 at 8-15.)

The Court finds that Plaintiff's requests for production are substantively identical to a previous request considered by the Court in a previous motion to compel filed by Plaintiff. Plaintiff previously sought an Order compelling Defendants to produce redacted parts of DOC Policies 6.5.1 and 6.3.1 concerning the use of restraint chairs and placement in a dry cell. *Easley*, 2020 WL 836695, at *8. The Court denied Plaintiff's motion to compel with respect to this request, indicating that this Court "has previously declined to compel the disclosure of Policies 6.5.1 and 6.3.1, both of which are highly confidential in the interests of prison safety and security." *Id.* (citing *Coit v. Garman*, No. 1:17-cv-1438, 2018 WL 3818853, at *2 (M.D. Pa. Aug. 10, 2018); *Eggleston v. Mitchell*, No. 1:12-cv-1220, 2013 WL 5351053, at *1 (M.D. Pa. Sept. 23, 2013); *Victor v. Lawlor*, No. 3:08-cv-1374, 2011 WL 1884616, at *2 (M.D. Pa. May 18, 2011). For the reasons previously

set forth by the Court, the Court will not compel Defendants to create and produce declarations summarizing those policies.  Accordingly, Plaintiff's (Doc. No. 279) will be denied with respect to the requests for production.

### 4.    Interrogatories and Requests for Admission

Plaintiff avers that he sent interrogatories to Defendants Keller, Marhelko, and Corby on November 25, 2019 and requests for admission to Defendants on March 20, 2020.  (Doc. No. 280 at 11.)  He maintains that Defendants have not responded to these requests.  (*Id.*)  Defendants assert that when they were reminded of the interrogatories through Plaintiff's motion, "responses to the requests were processed promptly."  (Doc. No. 290 at 3 n.5.)  They further assert that they learned of the requests for admission only through Plaintiff's motion and that they are processing responses to those.  (*Id.* at 3.)  Plaintiff does not contest Defendants' responses in his reply brief, nor does he indicate that he has not received such responses. Accordingly, his motion (Doc. No. 279) will be denied with respect to his arguments concerning the interrogatories and requests for admission.

### B.    Motion to Pursue Sanctions/Spoliation (Doc. No. 281)

In his second motion, Plaintiff avers that Defendants provide video from an incident that occurred on August 16-17, 2015 during which Plaintiff alleges a smock blanket was placed around his neck while he was in a restraint chair.  (Doc. No. 281.) Plaintiff avers that the video "cuts short" and that this cut is intentional.  (*Id.*)

Specifically, Plaintiff alleges that the video ended right before the smock blanket was fastened around his neck with flex cuffs and that the next video "shows the smock blanket already on" him. (Doc. No. 282 at 1-2.) Plaintiff also suggests that there "were to be 4 exercises of [him] in [a] restraint chair with flex cuffs/smock blanket on [his] neck but [only] one was produced." (*Id.* at 1.) As relief, Plaintiff asks that the Court "grant spoliation and accept all claims . . . on 8-17-[15] in which the smock blanket was placed on [Plaintiff's] neck and choked [him] and [he] was hyperventilating for 8 hours." (Doc. No. 281.)

As the Court has previously noted, a finding of spoliation is proper "when evidence is destroyed or altered, or when a party fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). Moreover, under some circumstances, the nonproduction of evidence is also "rightfully characterized as spoliation" because "a party's failure to produce a document can have the same practical effect as destroying it." *Id.* However, "a finding of bad faith is pivotal to a spoliation determination." *Id.* at 79.

In an Order dated July 13, 2020, the Court directed Defendants to file a surreply addressing Plaintiff's argument regarding the missing video segment. (Doc. No. 295.) Included with their surreply is a declaration from Robert Reese, the

Intelligence Gathering Captain at SCI Frackville. (Doc. No. 296-1.) Captain Reese avers that video footage of an inmate's placement in and removal from a restraint chair should be preserved along with the related investigative reports. (*Id.* ¶ 8.) Moreover, any exercise periods should be recorded but are only preserved if the "resulting video documents a planned or unplanned use of force against the inmate." (*Id.* ¶ 9.) Captain Reese indicates that there are three (3) situations where video footage may appear to end prematurely:

> 1) the video camera battery ran low or was completely out of power with or without warning prior to the conclusion of an event; 2) the video camera storage reached its maximum storage capacity with or without warning and the camera operator was unaware that video was no longer being recorded, or 3) on occasion, error on the part of the video camera operator otherwise accidentally causing the video camera to stop recording.

(*Id.* ¶ 12.) He states that the video cameras used during 2015 "did not always provide a sufficient warning before the battery life ended or video capacity was full." (*Id.* ¶ 12 n.1.) Moreover, "the viewfinder screen on the video camera continues to portray the scene even after video capacity is full; thus, staff may miss an alert (if it is provided) that the video is near its capacity if focused on the inmate instead of the small camera screen." (*Id.*) Captain Reese is "not aware of any occasions where staff intentionally and purposefully caused a video to stop recording an event." (*Id.* ¶ 13.)

As with Plaintiff's previous requests for sanctions and spoliation, noting before the Court demonstrates that Defendants have acted in bad faith such that a finding of spoliation and the imposition of sanctions would be warranted. The fact that the video appears to end prematurely does not lead to a conclusion that Defendants have acted in bad faith, particularly in light of Captain Reese's explanation set forth above. Accordingly, Plaintiff's motion (Doc. No. 281) will be denied.

## III.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for spoliation, to compel, and for sanctions (Doc. No. 279) will be granted in part and denied in part. The motion (Doc. No. 279) will be granted to the extent that Defendants will be directed to produce any outstanding video and audio files from August 17, 2015 and December 22, 2015 to Plaintiff within fourteen (14) days. The motion (Doc. No. 279) will be denied as to all other requests, including Plaintiff's requests for sanctions and spoliation. Plaintiff's motion to pursue sanctions/spoliation (Doc. No. 281) will be denied.

As noted above, discovery in the above-captioned case closed on May 31, 2020, and dispositive motions are currently due on or before July 31, 2020. In light of the Court directing Defendants to produce any outstanding video and audio files from August 17, 2015 and December 22, 2015 to Plaintiff within fourteen (14) days,

the Court will stay the dispositive motions deadline at this time.   Moreover,

Defendants' responses (Doc. Nos. 290, 291) suggest that they have been continuing

to comply with Plaintiff's discovery requests past the date on which discovery was

set to close.   Accordingly, the Court will direct Defendants to file a status report,

within fourteen (14) days, addressing whether additional time is needed to respond

to Plaintiff's discovery requests.   An appropriate Order follows.


                                                    s/ Sylvia H. Rambo
                                                    United States District Judge

Dated: July 21, 2020